UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

### CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced.  Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT
CAPTION: United States v. Commonwealth of Pennsylvania
_____

USCA NO.: 26-2684
_____

LOWER COURT or AGENCY and DOCKET NUMBER:
2:25-cv-1481 (W.D. Pa.)
_____

NAME OF
JUDGE: Hon. Cathy Bissoon
_____

Specify who is suing whom, for what, and the subject of this action.  Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

The United States has sued Pennsylvania Secretary of State Al Schmidt in his official capacity for failure to provide Pennsylvania's statewide voter registration list (SVRL) to the Attorney General, as required by Title III of the Civil Rights Act of 1960, 52 U.S.C. 20703. The United States seeks declaratory judgment and an order requiring Secretary Schmidt to produce the SVRL. The district court dismissed the United States' Title III claim (and other claims that are not on appeal).

The Pennsylvania Alliance of Retired Americans, the NAACP, the NAACP Pennsylvania State Conference, the League of Women Voters of Pennsylvania, Common Cause, and several individuals have intervened as defendants.

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal.  If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

A copy of the district court's order dismissing the United States' claims are attached.

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

Pursuant to Title III, the Attorney General demanded a copy of Pennsylvania's SVRL. Secretary Schmidt refused to provide the SVRL, and the United States filed suit.

The district court dismissed the United States' Title III claim. It held that the SVRL is not a "record" subject to Title III and that the United States failed to state the "basis" and "purpose" for its demand, as required by Title III. The court also held that it lacked subject-matter jurisdiction under 52 U.S.C. 20705, which provides that the "district court in which a demand is made ... or in which a record or paper is located ... shall have jurisdiction. In the same order, the court denied the United States' motion to transfer to the Middle District of Pennsylvania.

Identify the issues to be raised on appeal:

Whether 52 U.S.C. 20705 deprived the court of jurisdiction.

Whether the district court erred in dismissing the United States' Title III claim.

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this 21 day of July ,20 26 .

/s/Andrew Braniff

Signature of Counsel

Rev. 07/2015

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-cv-01481-CB |
| | ) | |
| v. | ) | Chief Judge Cathy Bissoon |
| | ) | |
| AL SCHMIDT, *in his official capacity as* | ) | |
| *Secretary of the State of Pennsylvania,* | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

The government's lawsuit, seeking unfettered access to the Commonwealth voters' highly sensitive personal identifiers, will be dismissed.

Through much of contemporary history, bedrock principles of conservative political ideology have included beliefs that the federal government's powers should be limited, and exercised in a manner "closest and most accountable to the people." *See* THE HERITAGE FOUNDATION, "Defining the Principles of Conservatism." As the "godfather" of modern conservatism, Ronald Reagan, once said:

> I believe in states['] rights. I believe in people doing as much as they can for themselves at the community level and at the private level, and I believe we've distorted the balance of our government today by giving powers that were never intended in the Constitution to [the] federal establishment.[1]

---

[1] Presidential candidate Ronald Reagan, August 3, 1980, Neshoba County Fair, Neshoba County, Mississippi.

That was then, this is now. Through the present administration, the government seeks to compel the production of highly sensitive personal identifiers held within the Commonwealth's voter rolls. The Constitution's Elections Clause notwithstanding, the government claims that its incursion is required to confirm the state's compliance with federal election law. What, a reader rhetorically may ask, could possibly go wrong? *Cf. Electronic Privacy Information Center report*, dated Apr. 3, 2026 (reporting the resignation of "a key privacy officer" at DHS); THE RISE OF DIGITAL AUTHORITARIANISM (discussing the prevalence of hackers attacking voter rolls and conducting data breaches).

Its efforts have been rebuked by every court to consider them. There have been nine rejections by district courts, one in circuit court—and counting.[2] As for adverse rulings in the district courts, this will make ten.

The Court of Appeals for the Sixth Circuit, in U.S. v. Benson, makes a strong case—and its analyses are the ones adopted here. *Id.*, -- F.4th --, 2026 WL 1815425 (6th Cir. Jun. 24, 2026). As the Benson Court explained, "[s]tates do most of the heavy lifting in overseeing federal elections," and they are vested with "broad powers" because "state governments are best acquainted with the situation of the people." *Id.* at \*1 (citation to quoted and other sources omitted, here and hereafter).

Congressional incursion has been circumspect. Historically, there have been compelling reasons. The Civil Rights Act, to combat *de jure* discrimination against black voters in the South. Benson at \*2. The NVRA of 1993, colloquially known as the "Motor Voter Law," to "dramatically expand opportunities for voter registration and to ensure that, once registered, voters could not be removed from the registration rolls by a failure to vote or because they had

---

[2] The administration's demands have yielded one unexpected benefit, namely, bipartisan agreement. Five of the district judges are Trump appointees.

changed addresses."  Democratic Nat'l Comm. v. Republican Nat'l Comm., 673 F.3d 192, 209 (3d Cir. 2012).  The Help America Vote Act (HAVA), in response to the historically "tight" presidential election of 2000.  Benson at *3.  What hypothetical grounds are there, now, for *executive* incursion?  The question goes to the heart of things.

The government all but concedes:  its best legal argument lies, ironically, in the Civil Rights Act.  Under it, the Attorney General may demand review of "any record or paper . . . retained and preserved" under the Act, so long as the demand "contain[s] a statement of the basis and the purpose therefor."  52 U.S.C. § 20703.  It is on this ground – a statute enacted to combat systemic racism against black citizens – the executive's fate lies.

Unredacted voter files are not "records," as the term is defined under Title III of the Act. Benson at *4-5.  The files are subject to additions, subtraction and revisions.  The NVRA and HAVA *require* them.  In light of these realities, the government's reading does violence to Section 20702.  That Section makes it a crime to "alter[]" or "destroy[]" the "records."  *Id.* Tortured statutory construction tends to yield such a result.

Nor does the government's demand contain "a statement of the basis and purpose therefore."  Benson at *8. (quoting Section 20703).  Now is not the time to abandon one's penchant for "say[ing] the quiet parts out loud."  *Cf. generally* In re 2025 UPMC Subpoena, 2025 WL 3724705, *2 (W.D. Pa. Dec. 24, 2025).

The quiet parts do not help.  Public statements from government officials reveal its intentions:  to create a nationwide voter-database, for potential weaponization in future elections; as a "fishing expedition," hoped to advance unsubstantiated claims of non-citizen voting; and as a tool for immigration enforcement.  *See* Doc. 92 at 5-7 & Doc. 116 at 6-13 (citing numerous sources); U.S. v. Oregon, 2026 WL 318402, *11 (D. Or. Feb. 5, 2026) ("it appears that DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for

3

use in a centralized federal database"; there are "numerous sources raising significant concerns about the true purpose of Plaintiff's . . . requests across the states"; there is reason to believe "that the data [is] in fact being aggregated in part for the purposes of immigration enforcement"; and Plaintiff's "assertions that the data [is] requested for NVRA or HAVA compliance [are] pretextual"); U.S. v. Galvin, 2026 WL 972129, *3 (D. Mass. Apr. 9, 2026) (characterizing the DOJ's request as a "fishing expedition").

Unlike race discrimination in the south (the CRA); recognized deficiencies in accessing the right of suffrage (NVRA); and to assuage contention in the face of a close election (HAVA) – concerns regarding widespread voting by non-citizens simply are not borne out by reality. *See* Fair Elections Center webpage: Voting By Noncitizens is a Non-Issue ("Extensive data shows that verified cases of noncitizen voting are vanishingly rare and statistically insignificant, with zero impact on any election outcomes.") *and* THE CENTER FOR ELECTION INNOVATION & RESEARCH webpage: (Updated) Review of Claims of Noncitizen Registrants and Voters ("Even when taken at face value, the largest [misleading] claims never identify numbers of possible noncitizen registrants or voters that amount to more than *a few tenths of one percent of the number of eligible voters in a state*.") (emphasis added).

For the reasons stated in the voluminous briefing here, the government has failed to demonstrate entitlement to Pennsylvania voters' personal identifiers under the NVRA or HAVA. The various Motions to Dismiss will be granted, and the dismissal is with prejudice.

As for the Civil Rights Act, the government suffers the additional indignity of *having sued in the wrong place*. *Compare* 52 U.S.C. § 20705 (the district court "in which a demand is made, or in which a record or paper so demanded is located, shall have jurisdiction") (cleaned up) *with* Doc. 121 at 5 (conceding that the records are located, and the request was made, in the Middle District of Pennsylvania). Subject matter jurisdiction over the CRA claim, here,

4

is lacking.  Dismissal of that claim, therefore, will be without prejudice.  Given the defects

suffered by the government's positions, a transfer to the proper forum would not promote justice.

28 U.S.C. § 1631.

Consistent with the above, the Court hereby enters the following:

## II.  <u>ORDER</u>

The Motions to Dismiss (**Docs. 91**, **106**, **108** & 115) are **GRANTED**.  The Motion by

AFPI to intervene (**Doc. 59**) is **DENIED AS MOOT**.[3]  The Motion to transfer (**Doc. 120**)

is **DENIED**.  Final judgment under Rule 58 will be entered, and the case marked closed.

IT IS SO ORDERED.


June 27, 2026                                           s/Cathy Bissoon
                                                        Cathy Bissoon
                                                        Chief United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[3]  As this Court previously has intimated, "[t]he presumption of regularity that has been previously extended to the [government] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds."  U.S. v. Oregon, 2026 WL 318402 at \*11; *accord* In re 2025 UPMC Subpoena, 2026 WL 570419, \*1 (W.D. Pa. Mar. 2, 2026) ("To the extent the DOJ has urged trust, . . . it must understand why its assurances are cold comfort.").  The notion that a private entity like AFPI – who seeks to intervene as a *plaintiff* – should be entrusted with Pennsylvania voters' sensitive information is even more outlandish.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,     )
    )
                    Plaintiff,     )     2:25-cv-01481-CB
    )
    v.     )     Chief Judge Cathy Bissoon
    )
AL SCHMIDT, *in his official capacity as*     )
*Secretary of the State of Pennsylvania*,     )
*et al.*,     )
    )
                  Defendants.     )

## JUDGMENT ORDER

FINAL JUDGMENT hereby is entered pursuant to Rule 58 of the Federal Rules of Civil

Procedure.  This case is marked CLOSED.

IT IS SO ORDERED.


June 27, 2026                                       s/Cathy Bissoon
                                        Cathy Bissoon
                                        Chief United States District Judge

cc (via ECF email notification):

All Counsel of Record