No. 26-2684

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

SECRETARY OF STATE FOR THE COMMONWEALTH OF PENNSYLVANIA,
Defendant-Appellee

PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS, NICHOLAS MASTON, GREGORY PERRY, TODD THATCHER, JOEL DICKSON, TRISHA KENT, LIOR STERNFELD, JOHN THOMPSON, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, COMMON CAUSE, MIKE CROSSEY,
Intervenors-Defendants-Appellees

NATIONAL ASS'N FOR THE ADVANCEMENT OF COLORED PEOPLE, PENNSYLVANIA STATE CONFERENCE OF THE NAACP, STACEY TAYLOR,
Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

# BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of counsel)*

*(continuation of counsel)*

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
JOSHUA R. ZUCKERMAN
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 333-0027

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 2

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF RELATED CASES AND PROCEEDINGS ........ 4

STATEMENT OF THE CASE ........ 4

A. Statutory Overview ........ 4

B. The Department of Justice Requests Voter Lists from Pennsylvania ........ 7

C. Procedural History ........ 9

SUMMARY OF ARGUMENT ........ 13

STANDARD OF REVIEW ........ 15

ARGUMENT

I. The district court had jurisdiction. ........ 16

A. Section 20705 is a venue statute. ........ 16

B. Defendants waived any objections to venue. ........ 19

II. The DOJ adequately stated the basis and purpose of its demand for Pennsylvania's SVRL. ........ 21

**TABLE OF CONTENTS (continued): PAGE**


A. Defendants may not challenge the factual accuracy of the basis and purpose for the Attorney General's demand. .......... 23

B. The DOJ stated the "basis" for its demand. .......... 28

C. The United States stated the "purpose" of its demand. .......... 35

III. Title III requires Pennsylvania to produce its current and unredacted SVRL. .......... 42

A. The SVRL is a record related to a federal election. .......... 42

B. Pennsylvania must produce the SVRL without redactions. .......... 46

C. Pennsylvania must produce an electronic copy of the SVRL. .......... 47

IV. The Attorney General's demand for an electronic, unredacted copy of Pennsylvania's SVRL does not violate privacy laws. .......... 49

A. The Attorney General's demand complied with the Privacy Act. .......... 50

B. The Attorney General's demand complied with the E-Government Act. .......... 52

C. The DOJ's demand complied with the Driver's Privacy Protection Act. .......... 56

D. Federal law preempts any contrary Pennsylvania privacy law. .......... 58

**TABLE OF CONTENTS (continued): PAGE**

CONCLUSION ............................................................................... 61

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960),
*aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*,
285 F.2d 430 (5th Cir. 1961) .......... 24

*American Oversight v. United States Dep't of Just.*,
45 F.4th 579 (2d Cir. 2022) .......... 52

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) .......... 58

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 37

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) .......... 35, 52

*Bryan v. United States*, 524 U.S. 184 (1998) .......... 45

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) .......... 58-59

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)
(per curiam) .......... 29, 40

*Consumers Union of U.S., Inc. v. Consumer Prod. Safety Comm'n*,
590 F.2d 1209 (D.C. Cir. 1978), *rev'd on other grounds*
*sub nom. GTE Sylvania, Inc. v. Consumers Union of U.S.,*
*Inc.*, 445 U.S. 375 (1980) .......... 20

*Denis v. Attorney Gen. of U.S.*, 633 F.3d 201 (3d Cir. 2011) .......... 43

*Doe v. Chao*, 540 U.S. 614 (2004) .......... 50

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) .......... 15, 38

**CASES (continued):** **PAGE**

*Donaldson v. United States*, 400 U.S. 517 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 ... 25-26

*Electronic Privacy Info. Ctr. v. United States Dep't of Com.*, 356 F. Supp. 3d 85 (D.D.C.), *vacated and remanded on other* grounds, 928 F.3d 95 (D.C. Cir. 2019) ... 55

*Ex Parte Siebold*, 100 U.S. 371 (1879) ... 59

*Fischer v. United States*, 603 U.S. 480 (2024) ... 45

*Fort Bend Ctny. v. Davis*, 587 U.S. 541 (2019) ... 16

*Foster v. Love*, 522 U.S. 67 (1997) ... 59

*Free Speech Coal., Inc. v. Attorney Gen. of the U.S.*, 677 F.3d 519 (3d Cir. 2012) ... 16

*Glacier Nw., Inc. v. International Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771 (2023) ... 60

*Gray v. Main*, 309 F. Supp. 207 (M.D. Ala. 1968) ... 46

*Greater Birmingham Ministries v. Secretary of State for Ala.*, 105 F.4th 1324 (11th Cir. 2024) ... 48

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ... 35

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ... 31

*Heckler v. Chaney*, 470 U.S. 821 (1985) ... 27

*In re Duncan*, 713 F.2d 538 (9th Cir. 1983) ... 18-19

**CASES (continued):** **PAGE**

*In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270 (3d Cir. 1999) ................. 16

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ...................................... 24

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................... *passim*

*Klotz v. Celentano Stadtmauer & Walentowicz LLP*,
991 F.3d 458 (3d Cir. 2021) ............................................................ 15

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ............. 43

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ................................ 15-16

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) .................. 43

*Neitzke v. Williams*, 490 U.S. 319 (1989) ................................................ 37

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ........................................................................ 35

*Panama R. Co. v. Johnson*, 264 U.S. 375 (1924) ..................................... 17

*Public Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ............................................................. 47

*Pure Oil Co. v. Suarez*, 384 U.S. 202 (1966) ........................................... 17

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ........................................................................ 46

*Reno v. Condon*, 528 U.S. 141 (2000) ....................................................... 57

*Reynolds v. Sims*, 377 U.S. 533 (1964) .................................................... 35

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ............................... 4-6

**CASES (continued):** **PAGE**


*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ..................... 55

*Trans World Airlines, Inc. v. Civil Aeronautics Bd.*,
339 F.2d 56 (2d Cir. 1964) ..................... 20

*Transcapital Leasing Assocs., 1990-II, L.P. v. United States*,
398 F.3d 1317 (Fed. Cir. 2005) ..................... 17-19

*United States v. Benson*, 179 F.4th 470,
*reh'g en banc denied*, No. 26-1225,
2026 WL 2364306 (6th Cir. Aug. 14, 2026) ..................... *passim*

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ..................... 25

*United States v. Mississippi*, 229 F. Supp. 925 (S.D. Miss. 1964),
*rev'd on other grounds*, 380 U.S. 128 (1965) ..................... 46

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ..................... 42-43

*Vorchheimer v. Philadelphian Owners Ass'n*,
903 F.3d 100 (3d Cir. 2018) ..................... 37

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) ..................... 45

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ..................... 19

*Webster v. Doe*, 486 U.S. 592 (1988) ..................... 27

*Yong Wong Park v. Attorney Gen. of the U.S.*,
472 F.3d 66 (3d Cir. 2006) ..................... 43


**CONSTITUTION:**


U.S. Const. Art. I, Cl. 1 ..................... 59

**CONSTITUTION (continued):** **PAGE**

U.S. Const. Art. VI, Cl. 2 .......... 58

**STATUTES:**

Civil Rights Act of 1960
(Title III)
52 U.S.C. 20701 *et seq.* .......... 1, 5
52 U.S.C. 20701 .......... *passim*
52 U.S.C. 20701-20706 .......... 30, 40
52 U.S.C. 20702 .......... 14, 45
52 U.S.C. 20703 .......... *passim*
52 U.S.C. 20704 .......... 5-6, 47, 60
52 U.S.C. 20705 .......... *passim*
Pub. L. No. 86-449, § 601, 74 Stat. 90 .......... 30
(Title VI)
52 U.S.C. 10101 .......... 30

Civil Rights Act of 1964 (Title VII)
42 U.S.C. 2000e-2 .......... 31
42 U.S.C. 2000e-5(b) .......... 33

Driver's Privacy Protection Act
18 U.S.C. 2721 *et seq.* .......... 56
18 U.S.C. 2721 .......... 56
18 U.S.C. 2721(a) .......... 56
18 U.S.C. 2721(a)(1) .......... 56
18 U.S.C. 2721(b)(1) .......... 56-57
18 U.S.C. 2721(c) .......... 56
18 U.S.C. 2725(1) .......... 56
18 U.S.C. 2725(3)-(4) .......... 56

E-Government Act of 2002
44 U.S.C. 3501 note .......... 53
44 U.S.C. 3502 .......... 53, 55
44 U.S.C. 3502(3)(A)(i) .......... 53, 56
44 U.S.C. 3502(3)(B) .......... 54

**STATUTES (continued): PAGE**


44 U.S.C. 3502(10) .... 53
§ 201 .... 53-54
§ 208(b)(1)(A)(ii) .... 53, 55-56
§ 208(b)(1)(B)(i) .... 53-55
Pub. L. No. 107-347, 116 Stat. 2899 .... 53

Equal Pay Act
29 U.S.C. 211(a) .... 34

Fair Housing Act of 1968
42 U.S.C. 3604-3606 .... 31
42 U.S.C. 3610(a)(1)(B)(iv) .... 33
42 U.S.C. 3617 .... 31

Help America Vote Act
52 U.S.C. 21083(a) .... 56
52 U.S.C. 21083(a)(1)(A) .... *passim*
52 U.S.C. 21083(a)(2)(A) .... 7, 42
52 U.S.C. 21083(a)(4)(A) .... 42
52 U.S.C. 21083(a)(5)(A)(i)-(ii) .... 7
52 U.S.C. 21083(a)(5)(A)(iii) .... 7
52 U.S.C. 21111 .... 41, 57
Pub. L. No. 107-252, 116 Stat. 1666 (2002) .... 34

Immigration and Nationality Act
8 U.S.C. 1421 (1983) .... 18
Pub. L. No. 86-414, § 310, 66 Stat. 239 (1952) .... 18

National Voter Registration Act of 1993
52 U.S.C. 20501 *et seq.* .... 1
52 U.S.C. 20501(a)(3) .... 40
52 U.S.C. 20501(b)(1) .... 4, 41
52 U.S.C. 20501(b)(3) .... 6, 40
52 U.S.C. 20507 .... 29, 34, 41-42
52 U.S.C. 20507(a)(4) .... 42
52 U.S.C. 20507(a)(4)(A)-(B) .... 6

**STATUTES (continued):** **PAGE**

52 U.S.C. 20507(i)(1) ........ 6, 47-48
52 U.S.C. 20507(i)(2) ........ 47
52 U.S.C. 20510(a) ........ 57

Privacy Act of 1974
5 U.S.C. 552a(e)(4) ........ 50-51
Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896 ........ 50

Voting Rights Act of 1965 ........ 50
52 U.S.C. 10301-10306 ........ 31
52 U.S.C. 10309 ........ 31

26 U.S.C. 7604(a) (1954 ed.) ........ 26

28 U.S.C. 1291 ........ 3

28 U.S.C. 1331 ........ 2, 19

28 U.S.C. 1345 ........ 2, 19

28 U.S.C. 1404 ........ 11

28 U.S.C. 1404(a) ........ 11

28 U.S.C. 1631 ........ 11, 13

31 U.S.C. 5314(a) ........ 54

44 U.S.C. 3518 ........ 54

44 U.S.C. 3518(c)(1) ........ 54

44 U.S.C. 3601 ........ 53, 55

Pa. Const. art. I, § 1 ........ 58

**REGULATIONS:** **PAGE**

28 C.F.R. 0.50(a) .......... 51

68 Fed. Reg. 47,610 (Aug. 11, 2003) .......... 51-52

70 Fed. Reg. 43,904 (July 29, 2005) .......... 51

82 Fed. Reg. 24,147 (May 25, 2017) .......... 51

**RULES:**

Fed. R. App. P. 2 .......... 62

Fed. R. App. P. 41(b) .......... 62

Fed. R. Civ. P. 12(b)(6) .......... 15

Fed. R. Civ. P. 12(h)(1) .......... 20

Fed. R. Civ. P. 12(h)(1)(B)(ii) .......... 19

**MISCELLANEOUS:**

Authority to Obtain & Share Statewide Voter Roll Data,
50 Op. O.L.C. (May 12, 2026),
https://www.justice.gov/olc/media/1440346/dl .......... 54

Devlin Barrett & Nick Corasaniti,
*Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025),
https://tinyurl.com/msfnu42n. .......... 39

Department of Homeland Sec.,
*DHS Cracks Down on Non-Citizens Illegally Voting in New Jersey* (July 31, 2026),
https://tinyurl.com/4wzrb7zv .......... 37

**MISCELLANEOUS (continued):** **PAGE**

Democracy Docket, *About Us* (2026),
https://tinyurl.com/y8ehb4tp........................................................39

Jim Saksa, *Trump Administration Sharing Voter Data Across Agencies, DHS Confirms*, Democracy Docket (Sept. 11, 2025),
https://tinyurl.com/6ebw7xnp ......................................................39

State of New Jersey, *Statement by Governor Mikie Sherrill* (July 21, 2026), https://tinyurl.com/yfjvdeyw.................................36

*The American Heritage College Dictionary* (4th ed. 2002) ......................55

U.S. Dep't of Just., Justice Manual § 9-11.151 (2020),
https://www.justice.gov/jm/jm-9-11000-grand-jury# ......................52

U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA*,
https://tinyurl.com/mwsvsjfv (last visited Sept. 7, 2026)).............34

U.S. Election Assistance Comm'n, About the EAC,
http://eac.gov/about (last visited Sept. 3, 2026) ...............................7

U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2024 Comprehensive Report* (June 2025),
https://tinyurl.com/38xb38tx..........................................................8

*Webster's New Int'l Dictionary* (2d ed. 1957)...........................................36

## INTRODUCTION

The United States brought this case against Pennsylvania Secretary of State Al Schmidt (Pennsylvania) alleging, *inter alia*, that Pennsylvania violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20701 *et seq*., which entitles the federal government to demand certain records pertaining to elections for federal office. Specifically, the United States alleged that Pennsylvania violated Title III by refusing the Attorney General's demand for an electronic, unredacted copy of its Statewide Voter Registration List (SVRL) to determine Pennsylvania's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq*.

The district court granted Pennsylvania's and intervenors' (collectively, defendants) Motions to Dismiss. The court held that it lacked subject-matter jurisdiction pursuant to 52 U.S.C. 20705 and that only the Middle District of Pennsylvania had jurisdiction. However, that statute governs venue, not jurisdiction, and Pennsylvania did not object to venue in the Western District of Pennsylvania.

On the merits, the district court erred in holding that (1) the SVRL is not a "record" within the meaning of Title III, (2) that the United States

failed to state the basis for its demand, and (3) that its asserted purpose was pretextual. *See* 52 U.S.C. 20703. Each of these holdings is erroneous. First, the SVRL is a "record" because it is "relat[ed] to" the act of registering to vote in a federal election. *Ibid.*; 52 U.S.C. 20701. Second, the United States identified the basis for the demand: potential anomalies in Pennsylvania's voter-registration data. Third, the United States asserted that the purpose of its demand was to assess Pennsylvania's compliance with federal law, and the district court was required to accept this fact as true at the motion-to-dismiss stage.

Defendants also argued that privacy statutes allow Pennsylvania to redact or withhold the SVRL. This Court should reject that argument. The United States complied with applicable federal law, which preempts any contrary state law.

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331, 1345. That court entered a final Order granting Pennsylvania's and intervenors' Motions to Dismiss

on June 27, 2026. JA1-6.[1] The United States filed a timely Notice of Appeal. JA7-9. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1. Whether Section 20705 deprived the district court of subject-matter jurisdiction. JA4-5, 153, 182-183.

2. Whether the United States adequately stated the basis and purpose for its demand for an electronic, unredacted copy of Pennsylvania's SVRL under Title III of the Civil Rights Act. JA3, 153-154, 178-181.

3. Whether the United States has the statutory authority to demand an electronic, unredacted copy of Pennsylvania's SVRL. JA3, 155, 181-182.

4. Whether federal or state privacy laws prevent the United States from demanding an electronic, unredacted copy of Pennsylvania's SVRL. JA155-158, 183-190.[2]

---

[1] "JA__" refers to page numbers in the Joint Appendix filed with this brief. "Doc. __, at __" refers to documents filed in the district court and the internal page number, No. 2:25-cv-1481 (W.D. Pa.).

[2] This issue was not ruled upon. *See* JA1-6.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. This appeal raises substantially similar issues to those in *United States v. Lieutenant Governor and Secretary of State of New Jersey* (*Caldwell*), No. 26-3085, (3d Cir.), in which the United States intends to file its opening brief by September 14, 2026; the Sixth Circuit's opinion in *United States v. Benson*, 179 F.4th 470 (*Benson II*), *reh'g en banc denied*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026) (*Benson III*); and in pending appeals in the First, Second, Fourth, Seventh, Eighth, Ninth, and Tenth Circuits. The United States respectfully requests that this Court coordinate resolution of this appeal with the resolution of the *Caldwell* appeal to the extent practicable and appropriate. This case also raises substantially similar issues to *United States v. Albence, et al.*, No. 1:25-cv-1453 (D. Del.).

## STATEMENT OF THE CASE

### A. Statutory Overview

Congress enacted Title III as part of the Civil Rights Act of 1960. The Act's purpose was to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South*

*Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). To that end, Title III "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq*.

Title III requires state election officers to preserve certain documents and produce them to the Attorney General upon his demand. Section 301 requires that "[e]very officer of election . . . retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. And the key provision at issue here, Section 303, authorizes the Attorney General or his representative to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying." 52 U.S.C. 20703. Such demand "shall contain a statement of the basis and the purpose therefor." *Ibid.*

The Attorney General and his representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding. 52

U.S.C. 20704. Should it be necessary to facilitate disclosure, the Attorney General may seek the aid of a district court: "The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705.

Although Congress enacted the Civil Rights Act, including Title III, with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress since has enacted additional laws that affect the "records and papers" that are subject to disclosure. 52 U.S.C. 20701. Relevant here are the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA), which help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3).

The NVRA's requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1) and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B). HAVA requires States to implement a

centralized computerized SVRL, and to engage in reasonable efforts to maintain that list by removing ineligible voters. 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers—namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

### B. The Department of Justice Requests Voter Lists from Pennsylvania

The United States Election Assistance Commission (EAC) is "an independent bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process." U.S. Election Assistance Comm'n, About the EAC, http://eac.gov/about (last visited Sept. 3, 2026). EAC conducts a biennial Election Administration and Voting Survey (EAVS)

of States. For the 2024 EAVS, States "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance." U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2024 Comprehensive Report* at iv (June 2025), https://tinyurl.com/38xb38tx.

On June 23, 2025, the Department of Justice (DOJ) sent a letter to Secretary Schmidt (JA194-196), requesting that he provide "information regarding the Commonwealth's HAVA compliance," including the processes by which ineligible voters, duplicate registrants, and non-citizens are removed from the SVRL. JA194-195. Secretary Schmidt provided some of the requested information. JA198-208.

On August 4, the DOJ sent a follow-up letter. JA210-212. The DOJ asked Secretary Schmidt to explain potential irregularities and ambiguous responses in Pennsylvania's EAVS responses. For example, 47 counties "recorded either 0 or 1 transactions to remove duplicate registrants," and Pennsylvania characterized the most common "reason for sending confirmation notices" as "Other." JA211. Based on its review of the report, the DOJ requested that Secretary Schmidt produce the "current electronic copy of the Commonwealth of Pennsylvania's

computerized statewide voter registration list." JA210. The DOJ sent an additional letter dated August 14 clarifying that it "requested Pennsylvania's [S]VRL to assess . . . compliance with the [SVRL] maintenance provisions of the National Voter Registration Act." JA221. The letter explained that Title III requires Secretary Schmidt to produce the SVRL to the Attorney General. JA222.

On August 18, Secretary Schmidt responded to the DOJ's August 4 letter and offered explanations for the potential irregularities in Pennsylvania's EAVS responses. JA214-219. On August 21, he sent an additional letter informing the DOJ that he would not produce the SVRL. JA225-227. He asserted that Title III "does not provide legal authority for such a broad request." JA226.

### C. Procedural History

On September 25, 2025, the United States sued Secretary Schmidt (JA41-58), asserting claims under Title III, HAVA, and the NVRA. The United States alleged that the refusal to produce an electronic, unredacted copy of the SVRL violated these statutes. JA53-55. Three groups intervened as defendants: Pennsylvania Alliance for Retired Americans and an individual voter (collectively, Alliance); the

NAACP, the Pennsylvania State Conference of the NAACP, and individual voters (collectively, NAACP); and Common Cause, the League of Women Voters of Pennsylvania, and several individual voters (collectively, Common Cause).[3] *See* Docs. 11, 17, 36.

Pennsylvania and defendants-intervenors each moved to dismiss. As relevant here, they argued that the United States failed to state a Title III claim because (1) the DOJ did not provide a sufficient statement of "basis" or "purpose" for its demand; (2) Title III does not require disclosure of the SVRL; and (3) federal and Pennsylvania privacy laws bar disclosure. JA153-158; Doc. 107, at 12-15; Doc. 109, at 12-22; Doc. 116, at 13-18. Pennsylvania also argued that the district court "lacks jurisdiction to adjudicate DOJ's Title III claim" because "the Civil Rights Act grants jurisdiction only to the federal district court 'for the district in which a demand is made' or 'in which a record or paper so demanded is located,'" pursuant to 52 U.S.C. 20705. JA153 (quoting 52 U.S.C. 20705); *see also* Doc. 109, at 22-23 (NAACP raising similar argument).

---

[3] One or more individuals intervened as defendants alongside these groups.

After filing its Opposition to these Motions to Dismiss (JA160-192), the United States filed a separate Motion to Transfer Venue under 28 U.S.C. 1404 (JA37). Although the United States maintained that the Western District of Pennsylvania had jurisdiction, it nevertheless moved to transfer to the undisputedly proper forum of the Middle District of Pennsylvania pursuant to 28 U.S.C. 1404(a) and 1406(a) to avoid "unnecessary delay in the litigation." JA276. In response, Pennsylvania suggested "that the Court defer ruling on the motion to transfer venue until it resolves the pending motions to dismiss." JA282. Pennsylvania asserted that the district court could not transfer venue under Sections 1404 or 1406 because the court did not "have jurisdiction over the subject matter." JA284. The "correct vehicle for transfer" therefore was 28 U.S.C. 1631. JA284. Pennsylvania added that it "ha[d] not objected to venue" in the Western District of Pennsylvania. JA284 n.2.

On June 27, 2026, the district court dismissed the United States' complaint. The court held that it lacked subject-matter jurisdiction over the Title III claim because the United States "sued in the wrong place." JA4 (emphasis omitted). According to the court, jurisdiction

exists only in the Middle District of Pennsylvania, the district in which the SVRL is "located, and the request [for the SVRL] was made[.]" JA4. The court accordingly dismissed the Title III claim without prejudice and denied the United States' Motion to Transfer because of "the defects suffered by the government's positions." JA5.

The purported "defects [in] the government's positions" were the district court's views on the merits. The court held that the SVRL is not a "record" within the meaning of Title III because it is "subject to additions, subtraction and revisions." JA3. It also held that the United States failed to provide "a statement of the basis and purpose" for its demand. JA3 (citation omitted). The court seemingly held that the United States' asserted purpose—to assess Pennsylvania's compliance with the list-maintenance provisions of the NVRA (JA221-223)—was pretextual. Citing "[p]ublic statements from government officials," the court suggested that the DOJ's true "intentions" for using the SVRL were "to create a nationwide voter-database, for potential weaponization in future elections; as a 'fishing expedition,' hoped to advance unsubstantiated claims of non-citizen voting; and as a tool for immigration enforcement." JA3. The district court denied the United

States' Motion to Transfer Venue, invoking 28 U.S.C. 1631 and finding that "a transfer to the proper forum would not promote justice." JA5.

The district court also dismissed the United States' HAVA and NVRA claims, which are not at issue in this appeal. JA4.

## SUMMARY OF ARGUMENT

**1.** Section 305 of Title III (52 U.S.C. 20705) does not deprive the district court of jurisdiction. Section 20705 therefore is a venue statute that governs *where* the United States may file suit, not *whether* the United States may file suit. Pennsylvania has waived its objections to venue in the Western District of Pennsylvania, and Intervenors lack the ability to challenge venue.

**2.** The district court erred in dismissing the United States' Title III claim on the ground that the DOJ failed to state an adequate basis for its demand for an electronic, unredacted copy of Pennsylvania's SVRL. Title III creates a special statutory proceeding under which district courts lack the authority to second-guess the DOJ's asserted basis and purpose for its demand. The United States' statement that it was investigating anomalies in Pennsylvania's 2024 EAVS response sufficiently stated a basis of its demand. The DOJ's statement that it sought to ensure

Pennsylvania's compliance with HAVA and the NVRA sufficiently stated the purpose of its demand, and the district court erred in holding at the motion-to-dismiss stage that this purpose was pretextual.

**3.** Title III authorizes the Attorney General to demand an unredacted copy of Pennsylvania's current SVRL. The SVRL is a "record[] . . . relating to any . . . registration . . . or other act requisite to voting in [a federal] election." 52 U.S.C. 20701. The district court held that a provision criminalizing the "alter[ation] and destr[uction]" of federal records means that the constantly updated SVRL is not a "record." 52 U.S.C. 20702. However, that provision does not apply to the SVRL because it prohibits only alterations that affect the integrity of the "record." Additionally, Pennsylvania must produce the SVRL without redactions because Title III does not allow States to produce redacted records. Pennsylvania's production must be electronic because Title III requires States to make records "available" for "copying," and the most natural way to copy the computerized SVRL is to make an electronic copy.

**4.** The Attorney General's demand did not violate any applicable privacy law. First, the demand did not violate the Privacy Act, which applies only to a federal agency's disclosure of private information, not

its receipt of information. Second, the demand did not violate the E-Government Act because it did not initiate a new collection of information and therefore did not trigger any need for a privacy impact assessment. Third, the demand did not violate the Driver's Privacy Protection Act because it falls squarely within the Act's exception for disclosure for use by any government agency in carrying out its functions, including law enforcement or other regulatory enforcement purposes. Fourth, Title III preempts any contrary Pennsylvania privacy law.

## STANDARD OF REVIEW

This Court reviews orders granting Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim—and the legal questions those motions raise—de novo. *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). While a court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Doe v. Princeton Univ.*, 30 F.4th 335, 342-343 (3d Cir. 2022). When considering whether a

complaint sufficiently states a claim, the court must accept all allegations "as true" and "construe the complaint in the light most favorable to the plaintiff." *Mayer*, 605 F.3d at 229.

Whether a district court had subject matter jurisdiction is an issue of law subject to de novo review. *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 273 (3d Cir. 1999); *Free Speech Coal., Inc. v. Attorney Gen. of the U.S.*, 677 F.3d 519, 530 (3d Cir. 2012).

## ARGUMENT

### I. The district court had jurisdiction.

#### A. Section 20705 is a venue statute.

The district court erroneously held that it lacked subject-matter jurisdiction under 52 U.S.C. 20705. In its entirety, that statute reads: "The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705.

Section 20705 is a venue statute, not a jurisdictional statute. Congress's use of "jurisdiction" in 52 U.S.C. 20705 does not necessarily implicate subject-matter jurisdiction. "Jurisdiction . . . is a word of many, too many, meanings." *Fort Bend Ctny. v. Davis*, 587 U.S. 541, 547 (2019)

(citation omitted). The word "jurisdiction" can refer to venue, not subject-matter jurisdiction.

Long before Title III was enacted, the Supreme Court held the term "jurisdiction" in a statute prescribing where a suit may occur "refers only to venue." *Pure Oil Co. v. Suarez*, 384 U.S. 202, 203 (1966) (citing *Panama R. Co. v. Johnson*, 264 U.S. 375, 384 (1924)). In *Panama Railway*, the Court interpreted a provision of the Jones Act providing that "[j]urisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 264 U.S. at 383 (citation omitted). The Court explained that this "provision is not intended to affect the general jurisdiction of the District Courts . . . but only to prescribe the venue for actions." *Id.* at 385. The Supreme Court reaffirmed *Panama Railway*'s holding in *Pure Oil*, which was decided after Title III's enactment. *Pure Oil*, 384 U.S. at 203.

Appellate courts applying *Pure Oil* likewise have held that the word "jurisdiction" refers to venue in statutes explaining that a plaintiff may file suit in the district where defendants reside or where items are located. In *Transcapital Leasing Associates, 1990-II, L.P. v. United*

*States*, 398 F.3d 1317 (Fed. Cir. 2005), the Federal Circuit considered a statute allowing a "tax matters partner" to file a "petition for readjustment" in "the district in which the partnership's principal place of business is located." *Id.* at 1320 (citation omitted). The Court explained that such language is "generally associated with venue, not jurisdiction." *Ibid.* The relevant language served "as a venue provision" because it "relates to the *locale* in which a suit may be properly instituted," rather than "the power of the court to hear the case or reach the parties." *Ibid.* (citation omitted). And in *In re Duncan*, 713 F.2d 538, 542 (9th Cir. 1983), the Ninth Circuit similarly interpreted a provision of the Immigration and Nationality Act, 8 U.S.C. 1421 (1983), providing that "[e]xclusive jurisdiction to naturalize persons as citizens . . . is hereby conferred upon [district courts and specified other courts]. The jurisdiction of all the courts herein specified to naturalize persons shall extend only to such persons resident within the respective jurisdiction of such courts[.]" Pub. L. No. 86-414, § 310, 66 Stat. 239 (1952) (8 U.S.C. 1421 (1983)). The Ninth Circuit concluded that Congress's use of "jurisdiction" was "merely imprecision," and the statute was just a "special venue provision." *In re Duncan*, 713 F.2d at 542. "The first

sentence . . . vest[ed] specified courts with the power to entertain petitions for naturalization; the second sentence define[d] the particular geographical area within which the petition must be brought." *Ibid.*

Like the aforementioned venue statutes, Section 20705 focuses on "where" a case may be brought, not "whether" it may be brought. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). It identifies the district court "in which a demand is made . . . or in which a record or paper so demanded is located" as the proper venue for a federal lawsuit. 52 U.S.C. 20705. The word "located" is "language generally associated with venue, not jurisdiction," *Transcapital Leasing*, 398 F.3d at 1320, and is a tell-tale sign that Section 20705 prescribes venue and does not limit subject-matter jurisdiction. Accordingly, the district court had jurisdiction pursuant to 28 U.S.C. 1331 and 1345.

**B. Defendants waived any objections to venue.**

Venue, unlike subject-matter jurisdiction, is waivable. A defendant waives a defense of improper venue when it fails to object in its answer or motion to dismiss. Fed. R. Civ. P. 12(h)(1)(B)(ii). So even if the United States erred by bringing suit in the Western District, Pennsylvania forfeited any improper-venue argument by not raising Rule 12(b)(3) in its

Motion to Dismiss. JA127-159. Pennsylvania also affirmatively waived any venue arguments when it expressly admitted that it was not "object[ing] to venue before this Court." JA284 n.2.

Intervenors, who raised Section 20705, cannot object to venue. Because "[v]enue is a privilege personal to a defendant in a civil suit . . . a person intervening on either side of the controversy may not object to improper venue." *Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 339 F.2d 56, 63-64 (2d Cir. 1964); *see also Consumers Union of U.S., Inc. v. Consumer Prod. Safety Comm'n*, 590 F.2d 1209, 1222 n.65 (D.C. Cir. 1978) (citation omitted) (acknowledging the "familiar rule" that "an intervenor generally is held to have waived his privilege to change the venue of a suit"), *rev'd on other grounds sub nom. GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375 (1980). Regardless, intervenors also forfeited any objections to venue by failing to raise them in their Motions to Dismiss. Fed. R. Civ. P. 12(h)(1); *see* Docs. 107, 109, 116.

In any event, the district court's denial of the Motion to Transfer Venue is inextricably intertwined with its consideration of the merits of the United States' Title III claim. The district court's sole rationale for

not transferring this case to a district where all parties conceded venue and jurisdiction was the court's belief that the United States' claims suffered certain "defects" on the merits that could not be cured through a transfer. JA4-5. If the event this Court determines that the district court lacked jurisdiction and that venue was not waived and was improper in the Western District of Pennsylvania, it nevertheless should address the merits of this case. Moreover, this appeal raises substantially similar issues to those in *Caldwell*, *supra*, No. 26-3085, in which the United States intends to file its opening brief soon. If this Court agrees that the United States stated a Title III claim, then it should reverse and remand with instructions to transfer the case to the Middle District of Pennsylvania with instructions to order the Commonwealth to provide the SVRL consistent with this Court's opinion.

## II. The DOJ adequately stated the basis and purpose of its demand for Pennsylvania's SVRL.

The district court dismissed the United States' Title III claim because the DOJ's demand did not contain "a statement of the basis and purpose therefore [sic]." JA3 (citation omitted). That was error.

Section 301 of Title III imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*), to

"retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. 20701 (emphasis added). Section 303 provides the Attorney General with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, and the state election officer has rejected it, the Attorney General may seek an order from the federal court "to compel the production of such record or paper." 52 U.S.C. 20705.

The DOJ followed the proper procedural steps to demand Pennsylvania's SVRL. In the August 4 letter, the United States described potential anomalies in Pennsylvania's EAVS responses. JA211. The letter requested that Pennsylvania produce its SVRL "[p]ursuant to Section 20507(i) of the NVRA" (JA210), and the August 14 follow-up letter clarified that HAVA "provides authority for the [DOJ] to

seek the [SVRL]" and that "the Attorney General is also empowered by Congress to request records pursuant to Title III" (JA221-222).

Title III's plain language and relevant precedents compel the conclusion that the Attorney General's demand provided a factual and legal "basis" for its demand. The DOJ also provided the "purpose" for its demand: "to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." JA222. Because the DOJ adequately stated the "basis and purpose" for its demand, Pennsylvania was required to produce its SVRL, and the district court erred in holding otherwise.

### A. Defendants may not challenge the factual accuracy of the basis and purpose for the Attorney General's demand.

As a threshold matter, the district court did not decide what level of scrutiny it should apply to the stated basis and purpose. The proper level of scrutiny is one of considerable deference to the Attorney General.

Title III creates a "special statutory proceeding." *Lynd II*, 306 F.2d at 225. The United States' demand for federal election records under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings," but rather "comparable to the form of a

traditional order to show cause, or to produce in aid of an order of an administrative agency." *Ibid.* The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and that "investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings," *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962).

By seeking records required to be maintained under Section 20701 in court under Title III, the United States initiated "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd II*, 306 F.2d at 225. Such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 225-226 (quoting 52

U.S.C. 20703).

Title III's "special statutory proceeding" limits how the Attorney General's demand for federal election records may be challenged and reviewed. Under the statute's plain language, "[t]here is no place for any . . . procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd II*, 306 F.2d at 226 (quoting 52 U.S.C. 20703). Accordingly, a state election official responding to the Attorney General's demand for federal election records may not use litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the Attorney General considers the records essential." *Ibid.* Nor is "the factual foundation for, or the sufficiency of," this statement "open to judicial review or ascertainment." *Ibid.*; *see United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (*Lynd I*).

The Fifth Circuit's approach to Title III's "summary proceeding[s]," *Lynd II*, 306 F.2d at 225, is consistent with subsequent Supreme Court precedent. In *Donaldson v. United States*, the Court addressed a

provision of the Internal Revenue Code that authorized the Secretary of the Treasury, for "the purpose of ascertaining the correctness of any tax return or collecting any such liability, to summon the person liable for tax, or any person having possession, custody, or care of books of account containing relevant entries to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry," 400 U.S. 517, 523-524 (1971) (citation modified), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520. A neighboring provision "grant[ed] the district courts of the United States jurisdiction 'by appropriate process to compel such attendance, testimony, or production.'" *Ibid.* (quoting 26 U.S.C. 7604(a) (1954 ed.)). The Supreme Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application"; and, moreover, precedent does not suggest those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Id.* at 528-529; *see Lynd II*, 306 F.2d at 226 (allowing judicial determination of whether "written demand

has been made" and whether the custodian "ha[s] been given reasonable notice . . . of the proceeding").

In sum, so long as the Attorney General has stated in writing the basis and purpose of the demand, Title III is satisfied and the records must be produced. *See* 52 U.S.C. 20703. There is no room for judicial inquiry as to whether the basis and purpose are factually accurate. Nothing in the statute purports to authorize courts to second-guess or probe the sufficiency or sincerity of the Attorney General's statement. "And nothing in Title III gives courts a judicially manageable standard to apply in reviewing the demand's format." *United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *15 (6th Cir. Aug. 14, 2026) (*Benson III*) (Thapar, J., dissenting). *Cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope of the "records and papers" that he may demand, 52 U.S.C. 20701, and a requirement that he communicate "the basis and the purpose" for his request, 52 U.S.C. 20703—not any standard against which to measure his statement of basis and purpose.

### B. The DOJ stated the "basis" for its demand.

One of the "defects" that the district court identified was that the United States purportedly failed to state the basis for its demand. JA3, JA5. The district court did not explain its reasoning, but it erred because the DOJ provided both a legal and a factual basis for demanding Pennsylvania's SVRL.

**1.** Title III does not specify whether the "basis" for a demand must be the factual basis or the legal basis. *See* 52 U.S.C. 20703. Assuming that a legal basis is sufficient, the United States easily satisfied the "basis" requirement. In its August 14 letter, it explained that it sought to "assess [Pennsylvania's] compliance with the statewide VRL maintenance provisions of the National Voter Registration Act" and that the "Help America Vote Act . . . also provides authority for the Justice Department to seek the State's VRL." JA221.

By invoking the NVRA and HAVA, the DOJ made clear that the legal basis for the written demand was those statutes and Pennsylvania's possible noncompliance with their list-maintenance requirements. The demand therefore gave Pennsylvania the necessary "reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226. And as *Lynd*

*II* explains, that "the factual foundation for, or the sufficiency of, the Attorney General's statement of the basis and the purpose contained in the written demand *is not open to judicial review or ascertainment*." 306 F.2d at 226 (emphasis added; citation and internal quotation marks omitted).

**2.** The DOJ also adequately explained the factual basis justifying its entitlement to Pennsylvania's SVRL. The August 4 letter identified potential anomalies in Pennsylvania's responses to the 2024 EAVS report. For example, 47 counties "recorded either 0 or 1 transactions to remove duplicate registrants," and Pennsylvania characterized the most common "reason for sending confirmation notices" as "Other." JA211. This provided ample basis for the United States to "investigat[e the] possible violation[]" of Pennsylvania's recordkeeping requirements under the NVRA. *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam). Indeed, the EAVS responses suggest that Pennsylvania might have improperly removed or failed to remove voters from its SVRL following confirmation notices, in violation of the NVRA. *See* 52 U.S.C. 20507. Pennsylvania has offered some explanations for these potential anomalies. JA214-219. But without access to the SVRL, the DOJ cannot

evaluate the accuracy of Pennsylvania's responses or whether Pennsylvania is in compliance with the NVRA.

Defendants wrongly asserted that the DOJ failed to state a factual "basis" for the United States' demand. Intervenors argued that the "basis" requirement of Title III compels the United States to provide evidence that a State has discriminated on the ground of race or otherwise illegally denied the right to vote. The NAACP argued that the United States' demand must be "based on racial discrimination allegations in the election process." Doc. 109, at 15. The Alliance argued that the United States must "try to articulate [a] basis to believe that Pennsylvania has denied the right to vote." Doc. 107, at 13. Common Cause incorporated these arguments by reference. Doc. 116, at 15.

Title III does not impose such rigid limitations on acceptable bases. The statute lacks language limiting its applicability to voting-rights violations based upon racial discrimination. *See* 52 U.S.C. 20701-20706. By contrast, Congress made clear elsewhere in the Civil Rights Act where it intended a remedy to be limited to racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (applying Title VI of the Act to violations of rights "on account of race or color") (52 U.S.C. 10101). That language

is consistent with express limitations of remedies in other civil rights statutes. Title VII of the Civil Rights Act of 1964 prohibits employment practices "because of such individual's race, color, . . . or national origin." 42 U.S.C. 2000e-2. The Voting Rights Act of 1965 prohibits discrimination "on account of race, color," or language. 52 U.S.C. 10301-10306, 10309. And the Fair Housing Act of 1968 prohibits discrimination in renting "because of race, color, . . . or national origin." 42 U.S.C. 3604-3606, 3617. This Court therefore should draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006), and conclude that evidence of noncompliance with the NVRA is an acceptable basis for an investigation.

Pennsylvania argued below that a "basis" is a "statement showing reason to believe that there have been civil rights violations." JA154. But Title III imposes a minimal burden on the Attorney General. So long as he has stated *any* basis whatsoever, "the factual foundation for, or the sufficiency of," this statement is not "open to judicial review or ascertainment." *Lynd II*, 306 F.2d at 226 (quoting 52 U.S.C. 20703); *see also United States v. Benson*, 179 F.4th 470, 487 (6th Cir. 2026) (*Benson II*) (Nalbandian, J., dissenting) (The adequacy of the basis is "virtually

unreviewable by a federal court.”). The demand need not identify the factual basis with particularity; the *Lynd II* court determined that the assertion that the United States stated a basis by citing “information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting.” 306 F.2d at 229 n.6 (citation omitted).

Regardless, potential noncompliance with the NVRA is an appropriate basis for a Title III demand. In *Benson II*, a divided panel of the Sixth Circuit held that the United States’ similar letter to Michigan failed to state a basis for demanding the SVRL. *Benson II*, 179 F.4th at 483. The United States sought en banc review, and a majority of the judges on the Sixth Circuit concluded the DOJ satisfied the “basis” component of Title III in a written demand that described “factual concerns with [the State’s] voter-registration list” and “identified its purpose to ‘assess’ the State’s ‘compliance’ with the NVRA’s and HAVA’s list maintenance requirements.” *Benson III*, 2026 WL 2364306, at *3

(Murphy, J., concurring) (citation omitted); *see also id.* at *10 (Griffin, J., dissenting); *id.* at *15 (Thapar, J., dissenting).[4]

Title III is far from unique. Other civil-rights "investigative tools" give the United States authority to conduct compliance reviews so long as there is minimal evidence of a violation of federal law. For example, the Fair Housing Act requires the Secretary of Housing and Urban Development to investigate all complaints of housing discrimination, even if the complaints lack factual merit (42 U.S.C. 3610(a)(1)(B)(iv)), and Title VII of the Civil Rights Act of 1964 likewise requires the Equal Employment Opportunity Commission to investigate all charges of discrimination that trigger its jurisdiction (42 U.S.C. 2000e-5(b)). Still other statutes give the United States broad authority to conduct compliance reviews, absent any evidence of wrongdoing. The Equal Pay Act, for example, allows the Department of Labor to "investigate and

[4] Although the issue was never raised before the district court in this case, a majority of the Sixth Circuit likewise concluded that an SVRL "comes into [the] possession" of an election officer such as Secretary Schmidt and is thus a proper "record[] or paper[]" under Title III. *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring); *id.* at *9 (Griffin, J., dissenting); *id.* at *14 (Thapar, J., dissenting). That is because the phrase "come into . . . possession" has independent "legal significance." *Id.* at *7 (Griffin, J., dissenting).

gather data regarding the wages, hours, and other conditions and practices of employment . . . and may enter and inspect such places and such records [of employment]." 29 U.S.C. 211(a). The United States accordingly may obtain "[a]ny record or paper required by section 20701," as long as it states the "basis" for doing so. 52 U.S.C. 20703. This Court should reject Pennsylvania's effort to engraft an extratextual requirement that the United States provide a basis for concluding that there is a civil-rights violation.

In any case, the United States has provided a basis to believe that there might have been a civil-rights violation. HAVA seeks to protect voting rights. The statute "establish[es] minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666 (2002) (preamble). Those minimum standards, including accurate voter lists, were created to improve "voting systems and voter access." U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA* 1, https://tinyurl.com/mwsvsjfv (last visited Sept. 7, 2026). The NVRA similarly mandates list-maintenance procedures that help prevent the risk of fraudulent votes. *See* 52 U.S.C. 20507. These

statutes work together to guard against illegal votes that "dilute the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). "[T]he right of suffrage" that these statutes help protect "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). The United States provided a factual basis justifying an investigation of whether Pennsylvania has diluted citizens' right to vote by failing to remove duplicate registrants and by failing to explain the reason for sending the plurality of its confirmation notices. JA211.

The United States provided the "basis" for its demand under Title III. The district court should be reversed for concluding otherwise.

### C. The United States stated the "purpose" of its demand.

**1.** Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). The ordinary meaning of "purpose" is the "end or aim to be kept in view in any plan, measure

exertion or operation; design; intention." *Purpose*, *Webster's New Int'l Dictionary* (2d ed. 1957). The August 14 letter therefore clearly explained the "purpose" of the United States' demand: "to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." JA222.

The district court nevertheless held that the United States failed to provide "a statement of the . . . purpose." JA3. The court concluded that the asserted purpose was pretextual because "[p]ublic statements from government officials reveal [the United States'] intentions: to create a nationwide voter-database, for potential weaponization in future elections; as a 'fishing expedition,' hoped to advance unsubstantiated claims of non-citizen voting; and as a tool for immigration enforcement."[5] JA3.

---

[5] The district court pronounced that concerns about "widespread voting by non-citizens simply are not borne out by reality." JA4. Given both the investigative nature of a Title III demand and the procedural posture of this case (on a motion to dismiss), the district court's views on non-citizen voting were irrelevant and beside the point. In any event, recent evidence from within this Circuit points in the opposite direction of the district court's proclamation. *See* State of New Jersey, *Statement by Governor Mikie Sherrill* (July 21, 2026), https://tinyurl.com/yfjvdeyw (New Jersey Governor acknowledging that 6600 aliens were illegally registered to vote in New Jersey and that "fewer than 400" of these aliens

The district court erred in dismissing the United States' asserted purpose as pretextual. As a matter of blackletter law, courts deciding a motion to dismiss must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). District courts also are required to "accept as true the well-pleaded allegations in the amended complaint, including those in the exhibits attached to it." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 103 (3d Cir. 2018). The United States incorporated the August 14 letter into its complaint by reference, so the district court should have treated the letter's asserted purpose as true. Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Instead of accepting the facts in the incorporated August 14 letter as true, the district court held that the United States' asserted purpose

---

voted); Department of Homeland Sec., *DHS Cracks Down on Non-Citizens Illegally Voting in New Jersey* (July 31, 2026), https://tinyurl.com/4wzrb7zv (announcing indictment of four).

was pretextual. It accused the United States of "saying the quiet parts out loud" and of plotting to use voter data for purposes unrelated to NVRA and HAVA enforcement. JA3 (brackets and citation omitted). In arriving at this conclusion, it relied on "numerous sources" of hearsay in Pennsylvania's and Common Cause's Motions to Dismiss. JA3.

Federal courts have no authority to second-guess the United States' stated purpose under Title III. The "factual foundation for . . . the Attorney General's state of . . . purpose . . . is not open to judicial review or ascertainment." *Lynd II*, 306 F.2d 222, 226 (5th Cir. 1962). The district court therefore erred by relying on evidence outside the complaint and accepting as true allegations from such extrinsic sources that were inconsistent with the "well-pleaded facts of [the] complaint." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Many of the sources relied upon by Defendants and the district court are untested and may have their own political biases or motivation to exaggerate or distort the truth. For example, one source is an article on the website Democracy Docket, a website founded by the managing partner of the law firm representing the Alliance. The article claims that "an unnamed DHS spokesperson" provided a statement about interagency information-

sharing. JA139 n.12.[6] Another source is a "DOGE staffer." JA139. And another is a *New York Times* article misleadingly characterizing that DOJ employees as being "interested in a central, federal database of voter information." Doc. 116, at 6.[7] Whether these sources accurately convey the United States' purpose is a question unsuited for the motion-to-dismiss stage. *Cf.* Order at 7, *United States v. North Carolina Bd. of Elections*, No. 5:25-cv-283 (E.D.N.C. Jan. 12, 2026) (Doc. 87) (rejecting proposed intervenors' fears regarding a "national voter file" and improper use of voter data as "speculative and premature").

**2.** Defendants also argued that the United States' asserted purpose of ascertaining Pennsylvania's compliance with federal law is an improper purpose under Title III. According to defendants, the United States must "assert an investigation of racial discrimination" or a similar

---

[6] *See* Jim Saksa, *Trump Administration Sharing Voter Data Across Agencies, DHS Confirms,* Democracy Docket (Sept. 11, 2025), https://tinyurl.com/6ebw7xnp; Democracy Docket, *About Us* (2026), https://tinyurl.com/y8ehb4tp.

[7] The employees quoted in the article did not announce an intention to create a database. The article stated that the United States "plans to use this information [voter data] to enforce federal election laws and protect the integrity of federal elections." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://tinyurl.com/msfnu42n.

infringement of the right to vote. Doc. 109, at 15 (NAACP); *see also* JA153-154 (Pennsylvania's similar argument); Doc. 107, at 13 (Alliance's similar argument).

Title III does not impose such rigid limitations on acceptable purposes. "[N]othing in the statute's text . . . limits the purposes for which the DOJ may request the records." *Benson III*, 2026 WL 2364306, at *4 (Murphy, J., concurring); *see* 52 U.S.C. 20701-20706. As explained above, Congress made clear elsewhere in the Civil Rights Act where it intended a remedy to be limited to racial discrimination. *See* p. 31, *supra*. Because no such limitation exists here; "investigating possible violations of a Federal statute," *Coleman*, 313 F.2d at 868, constitutes a valid purpose of a demand for federal election records under the statute.

Further, Congress enacted the NVRA based on its finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3). Title III, at the very least, empowers the Attorney General to investigate and assess

compliance with other elections statutes, such as the NVRA and HAVA, aimed at increasing voter registration. 52 U.S.C. 20501(b)(1), 21111.

**3.** As a final matter, Pennsylvania and the Alliance argued that some of the data sought by the United States "is not necessary to ascertain Pennsylvania's compliance" with federal law. JA153; *see also* Doc. 107, at 14. Specifically, they argue that the United States does not need Social Security and driver's license numbers to determine whether Pennsylvania is making the requisite "reasonable effort" to remove ineligible registrants under the NVRA. JA143-144 (quoting 52 U.S.C. 20507).

Title III requires the United States to state the "purpose" for its demand, not to provide a detailed explanation of how the demand will advance that purpose. *See* 52 U.S.C. 20703. Accordingly, the only "matters open for determination" by this Court are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226; *see* pp. 23-27, *supra*.

In any event, the necessity of the requested data is straightforward. "[W]ithout the unredacted records, the federal government cannot

effectively verify [Pennsylvania's] compliance" with federal law. *Benson III*, 2026 WL 2364306, at *6 (Griffin, J., dissenting); *see also id.* at *15 (Thapar, J., dissenting). HAVA requires that the SVRL "assign[] a unique identifier to each legally registered voter in the State," 52 U.S.C. 21083(a)(1)(A), so inspecting the SVRL (unredacted so as to show these identifiers) is plainly necessary to assessing Pennsylvania's compliance with HAVA. Beyond that, the electronic SVRL allows the Department to assess whether Pennsylvania's list contains duplicate registrations, voters who have died or changed residence, and voters who were never eligible to register. *See* 52 U.S.C. 20507(a)(4), 21083(a)(2)(A) and (a)(4)(A). The United States can identify these voters using Social Security and driver's license numbers.

## III. Title III requires Pennsylvania to produce its current and unredacted SVRL.

### A. The SVRL is a record related to a federal election.

The district court held that "[u]nredacted voter files are not 'records[]' as the term is defined under Title III." JA3. The district court should not have addressed this issue because defendants waived the argument that the SVRL is not a "record" by failing to raise it in their Motions to Dismiss. *See United States v. Sineneng-Smith*, 590 U.S. 371,

375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation."). Regardless, the district court is incorrect.

Title III requires States to "retain and preserve . . . all records and papers . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in [a federal] election," 52 U.S.C. 20701, and produce "[a]ny record or paper" to the Attorney General upon "demand," 52 U.S.C. 20703. "Wide scope must be accorded the Attorney General in the facilities for adequate investigation." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). That is why Congress used the phrase "relating to" in Section 20701. The Supreme Court has stated that "the ordinary meaning of 'relating to' is a broad one." *Yong Wong Park v. Attorney Gen. of the U.S.*, 472 F.3d 66, 72 (3d Cir. 2006) (brackets omitted) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). "Indeed, when asked to interpret statutory language including the phrase 'relating to,'" the Supreme Court "has typically read the relevant text expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018) (collecting cases); *Denis v. Attorney Gen. of U.S.*, 633 F.3d 201, 209 (3d Cir. 2011) (explaining that the phrase "relating to" "is

to be read expansively"). As its name indicates, a statewide voter registration list is a list of all registered voters and therefore clearly is a document "relating to any . . . registration." 52 U.S.C. 20701.

The district court determined that its interpretation of Section 20703 is compelled by Section 20702, which criminalizes the "alter[ation]" and "destr[uction]" of "records." JA3 (citation omitted). Because the SVRL is "subject to additions, subtractions, and revisions," *i.e.*, alterations, it cannot be a "record" because altering a "record" is illegal.

The district court failed to acknowledge that the word "'alter' takes meaning from its surrounding terms." *United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *9 (Griffin, J., dissenting) (6th Cir. Aug. 14, 2026) (*Benson III*) (citation omitted). Those surrounding terms—"steals, destroys, conceals, [and] mutilates"—"describe varying degrees of interference with the availability and integrity of a record." *Ibid.* The term "alters" therefore "likewise refers to any minor tampering with or corruption of the document's integrity—not routine updates necessary to maintain an accurate voter list." *Ibid.*

The Supreme Court recently considered the similar phrase "alters, destroys, mutilates, or conceals a record." *Fischer v. United States*, 603 U.S. 480, 483 (2024) (quoting 18 U.S.C. 1512(c)(1)). Applying the *noscitur a sociis* canon, the Court held that each of these words must be understood as "actions that, by their nature, impair the integrity or availability of records, documents, or objects." *Id.* at 490. One who performs the list maintenance mandated by HAVA and the NVRA therefore does not "alter" the SVRL within the meaning of Section 20702. Rather, he "retain[s] and preserve[s]" the SVRL as required by Section 20701. 52 U.S.C. 20701; *see Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1085 (10th Cir. 2025) (applying similar analysis to the NVRA's obligation that States "maintain" records). Section 20702's willfulness mens rea, which the district court ignored, ensures that list maintenance under the NVRA and HAVA could not run afoul of Title III. 52 U.S.C. 20702; *see Bryan v. United States*, 524 U.S. 184, 191-192 (1998).

The district court's contrary conclusion "contravenes the canon against implied repeal." *United States v. Benson*, 179 F.4th 470, 485 (6th Cir. 2026) (*Benson II*) (Nalbandian, J., dissenting). Even if the statutes were truly inconsistent, the "specific" list-maintenance requirements in

the NVRA and HAVA would merely create "an exception" to the "general" prohibition in Section 20702. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

### B. Pennsylvania must produce the SVRL without redactions.

Defendants incorrectly argued below that if Pennsylvania is required to produce the SVRL, it nevertheless may redact it. JA154-155 (Pennsylvania); Doc. 109, at 19-21 (NAACP); Doc. 107, at 15 (Alliance). The opposite is true. Nothing in Title III authorizes a State to redact documents demanded by the Attorney General. Indeed, even in the 1960s, voter-registration applications—unquestionably records covered by the CRA, *see* 52 U.S.C. 20701—sometimes contained significant personal information such as birthdates and addresses. *See Gray v. Main*, 309 F. Supp. 207, 219 (M.D. Ala. 1968) (birthdate); *United States v. Mississippi*, 229 F. Supp. 925, 995 & nn.92-93 (S.D. Miss. 1964) (Brown, J., dissenting) (providing various questions on a registration application form), *rev'd on other grounds*, 380 U.S. 128 (1965).

The NAACP's pro-redaction argument relies on inapposite cases regarding "the interpretation of similar records provisions under the NVRA." Doc. 109, at 21. The NVRA has a *public*-inspection requirement

that compels a State, with minor exceptions, "for at least 2 years . . . [to] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). Because of the "privacy risks implicated by the public release" of voter data, courts have read into the NVRA's public-inspection provision an option for States to redact "uniquely or highly sensitive personal information." *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

Such concerns are absent here. Title III does not vest the public with a right to inspect the records demanded by the United States but rather safeguards those records from disclosure. 52 U.S.C. 20704. That the NVRA allows the public to inspect the names and addresses of certain voters, 52 U.S.C. 20507(i)(2), therefore has no bearing on whether Title III allows the Attorney General to demand additional unredacted data.

### C. Pennsylvania must produce an electronic copy of the SVRL.

The NAACP argued below that the DOJ "has not been denied proper disclosure under the CRA [Civil Rights Act]" because the United

States "seeks relief through the provision of electronic records," whereas the "inspection of records under the NVRA may be limited to only in-person inspection." Doc. 109, at 22. This dispute as to *how* the United States may copy the SVRL has no bearing on *whether* the United States is entitled to a copy of the SVRL. Regardless, the NAACP conflates the differing access provisions of Title III and the NVRA.

The NVRA requires States to make certain records available for "photocopying at a reasonable cost." 52 U.S.C. 20507(i)(1). Title III, in contrast, requires States to make records "available" to the Attorney General "for inspection, reproduction, and copying." 52 U.S.C. 20703. The words "reproduction" and "copying," which encompass any and all methods for doing so, are broader than the word "photocopying," which specifies the means in which copying must take place.[8] The NAACP relies on *Greater Birmingham Ministries v. Secretary of State for Ala.*, 105 F.4th 1324 (11th Cir. 2024), but that case is inapplicable. Doc. 109, at 22. There, the Eleventh Circuit held that the word "photocopying" in the NVRA does not require "electronic production." *Id.* at 1332-1335. But

[8] Pennsylvania seems to appreciate this distinction, arguing that the NVRA alone does not require electronic disclosure. JA147.

the words "reproduction" and "copying" in Title III do. Because the SVRL exists in electronic form—HAVA requires Pennsylvania to maintain a "computerized" SVRL, 52 U.S.C. 21083(a)(1)(A)—the United States is entitled to an electronic copy. The natural way to reproduce or copy a computerized list is to make an electronic copy.

The NAACP suggests that Pennsylvania can comply with Title III by merely making the records available for "review." Doc. 109, at 22 (citation omitted). Title III requires States to make records available for "inspection, reproduction, *and* copying," 52 U.S.C. 20703 (emphasis added), not "inspection, reproduction, *or* copying." Inspection alone is insufficient. Title III provides that the United States is entitled to a reproduction or copy of the SVRL.

## IV. The Attorney General's demand for an electronic, unredacted copy of Pennsylvania's SVRL does not violate privacy laws.

Although the district court did not reach this issue, Pennsylvania erroneously argued below that the United States' demand for an electronic, unredacted copy of its SVRL violated three federal privacy laws: the Privacy Act, the E-Government Act, and the Driver's Privacy

Protection Act. JA156-158. Its alternative argument that *state* privacy laws prevent disclosure of the SVRL is meritless. JA155-156.

### A. The Attorney General's demand complied with the Privacy Act.

The Privacy Act was designed to "protect the privacy of individuals identified in information systems maintained by Federal agencies" through regulation of "the collection, maintenance, use, and dissemination of information by [federal] agencies." *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896).

The Privacy Act's plain language thus makes clear that the Act cannot bar the United States' receipt of an electronic, unredacted copy of Pennsylvania's SVRL. Because the Act only applies to a federal agency's disclosure of private information, it does not prohibit a federal agency from demanding private information from a State. Moreover, the Act does not prevent Pennsylvania from complying with that demand because Pennsylvania is not a federal agency.

Furthermore, the United States has published the requisite notice about data collection in the Federal Register pursuant to 5 U.S.C. 552a(e)(4). *Contra* JA156-157. The Privacy Act requires federal

agencies to "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records." 5 U.S.C. 552a(e)(4).

The DOJ published the necessary System of Records Notice (SORN). It has published a full list of routine uses for its collection of voter information, which can be found in the systems of records notices titled JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610 (Aug. 11, 2003), 70 Fed. Reg. 43,904 (July 29, 2005), and 82 Fed. Reg. 24,147 (May 25, 2017). The SORN states that "[t]he records in the system of records are kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51." 68 Fed. Reg. at 47,611. And the cited regulation, in turn, makes clear that the Civil Rights Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a). Accordingly, the SORN covers the NVRA, HAVA, and the CRA as statutes for routine use.

Pennsylvania incorrectly argued below that the SORN is inadequate because registered voters are not "[s]ubjects of

investigations, victims, [or] potential witnesses." JA157 (brackets in original). The term "subject[]" is a "term[] of art in the context of DOJ investigations," *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted), which includes anyone whose "conduct is within the scope of the . . . investigation," U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury#. Persons who appear in a statewide voter registration list are "[s]ubjects of investigations," 68 Fed. Reg. at 47,611, as their voter registrations are within the scope of the Division's investigation into list maintenance and voter fraud. Moreover, because votes case by eligible voters may be diluted by those cast by ineligible voters, *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021), eligible voters are potential "victims" of NVRA and HAVA non-compliance, 68 Fed. Reg. at 47,611. The Act therefore provides no basis to dismiss the United States' Complaint.

### B. The Attorney General's demand complied with the E-Government Act.

In the district court, Pennsylvania cursorily argued that the United States did not comply with the E-Government Act because the United

States did not allege that it conducted a privacy impact assessment (PIA). JA158. The United States was not required to perform such an assessment.

Pursuant to the E-Government Act, agencies must "conduct a [PIA]" before "initiating a new collection of information" in particular circumstances "if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons." E-Government Act of 2002, Pub. L. No. 107-347, § 208(b)(1)(A)(ii) and (B)(i), 116 Stat. 2899, 2921-2922 (44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). A "collection of information" is—with certain exclusions noted below—the act of "obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for," as relevant here, "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," where a "person" can include a "State." 44 U.S.C. 3502(3)(A)(i) and (10); *see* E-Government Act § 201 (incorporating definitions from 44 U.S.C. 3502 and 3601). The PIA requirement does not apply here for several reasons.

First, the Attorney General has neither asked identical questions of nor imposed any reporting requirements on any persons in connection with the DOJ's demand for Pennsylvania's (or any State's) SVRL. E-Government Act § 208(b)(1)(B)(i); *cf.* 31 U.S.C. 5314(a) (mandating that the Secretary of the Treasury require individuals to keep records or file reports regarding certain financial relationships or transactions with foreign agencies).

Second, a "collection of information" does not include information collected during this type of investigation. "The term 'collection of information' . . . shall not include a collection of information described under [44 U.S.C. 3518(c)(1)]." 44 U.S.C. 3502(3)(B); *see* E-Government Act § 201. Section 3518(c)(1)(B), in turn, excludes any collection of information as part of an "investigation involving an agency against specific individuals or entities." 44 U.S.C. 3518. The DOJ's investigation into Pennsylvania's compliance with HAVA and the NVRA falls squarely within this carve-out. *See* Authority to Obtain & Share Statewide Voter Roll Data, 50 Op. O.L.C. (May 12, 2026) (slip op. at 33), https://www.justice.gov/olc/media/1440346/dl.

Third, the Attorney General has not "initiat[ed] a new collection of information." E-Government Act § 208(b)(1)(A)(ii) and (B)(i). "The term 'initiating'" in the E-Government Act "has no statutory . . . definition," *Electronic Privacy Info. Ctr.* (*EPIC*) *v. United States Dep't of Com.*, 356 F. Supp. 3d 85, 87 (D.D.C.), *vacated and remanded on other grounds*, 928 F.3d 95 (D.C. Cir. 2019), nor does the term "new," *see* 44 U.S.C. 3502, 3601. Accordingly, courts give these terms their "ordinary meaning" and may consult dictionary definitions. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566-568 (2012). "Contemporary dictionaries define 'initiate' as '[t]o begin, commence, enter upon; to introduce, set going, give rise to, originate, 'start' (a course of action, practice, etc.).'" *EPIC*, 356 F. Supp. 3d at 89 (brackets in original; citation omitted) (collecting definitions). The relevant definition of "new" is "[h]aving been made or come into being only a short time ago; recent" or "[n]ever used . . . before now." *The American Heritage College Dictionary* 936 (4th ed. 2002).

The demand in this case did not begin any new collection of information. The Attorney General demanded that Secretary Schmidt provide Pennsylvania's SVRL, which the Commonwealth was required to "define[], maintain[], and administer[] at the State level." 52 U.S.C.

21083(a)(1)(A). Ever since the passage of HAVA, an SVRL must "contain[] the name and registration information of every legally registered voter in the State and assign[] a unique identifier to each legally registered voter in the State." *Ibid.*; *see generally* 52 U.S.C. 21083(a). Seeking information already maintained by the State due to pre-existing "reporting or recordkeeping requirements," 44 U.S.C. 3502(3)(A)(i) (defining "collection of information"), is not the "initiat[ion of] a new collection of information," E-Government Act § 208(b)(1)(A)(ii).

### C. The DOJ's demand complied with the Driver's Privacy Protection Act.

Pennsylvania also argued that the DOJ's demand violated the Driver's Privacy Protection Act (DPPA), 18 U.S.C. 2721 *et seq.*, which precludes the disclosure of personal information obtained "in connection with a 'motor vehicle record.'" JA158 (quoting 18 U.S.C. 2721(a)(1)). Although the DPPA generally prohibits the disclosure of "personal information" obtained by a state department of motor vehicles in connection with a motor-vehicle record, *see* 18 U.S.C. 2721(a) and (c), 2725(1) and (3)-(4), disclosure is allowed "for use by any government agency. . . in carrying out its functions," including law enforcement or other regulatory enforcement purposes. 18 U.S.C. 2721(b)(1); *see also*

*Reno v. Condon*, 528 U.S. 141, 145 & n.1 (2000) ("The DPPA *permits* DMVs to disclose personal information from motor vehicle records for a number of purposes," including "for use 'by any government agency . . . in carrying out its functions.'") (quoting 18 U.S.C. 2721(b)(1)).

The DOJ's demand for an electronic, unredacted copy of Pennsylvania's SVRL falls squarely within this exception. The DOJ is a "government agency . . . carrying out [one of] its functions," 18 U.S.C. 2721(b)(1), namely assessing and ensuring compliance with federal election statutes. *See* 52 U.S.C. 20510(a) (enforcing the NVRA); 52 U.S.C. 21111 (enforcing HAVA). In particular, the DOJ is verifying voter registration records and associated list maintenance activities by State and local entities. Under the governmental-function exemption in Section 2721(b)(1), the United States' use of and access to the SVRL is authorized even though some of the information originates from a motor-vehicle record. Pennsylvania's argument to the contrary relies on the false premise that the United States does not need voters' Social Security and driver's license numbers. *See* pp. 41-42, *supra*.

### D. Federal law preempts any contrary Pennsylvania privacy law.

Pennsylvania argued below that state law necessitates the redaction or withholding of certain portions of the SVRL sought by the United States. JA155-156. It cites a provision of the Pennsylvania Constitution that protects the "right of the individual to control access to, or the dissemination of, personal information about himself or herself." Pa. Const. art. I, § 1, and argues that this provision prevents the disclosure of Social Security and driver's license numbers. JA155.

Even assuming that the Pennsylvania Constitution recognizes a privacy interest in government-assigned numbers, state law does not allow Pennsylvania to defy federal law. For the reasons explained above, pp. 21-23, *supra*, the United States is entitled under federal law to compel and inspect Pennsylvania's unredacted SVRL. To the extent that state law prohibits Pennsylvania from complying with the United States' demands, state law must yield. *See* U.S. Const. Art. VI, Cl. 2; *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013) ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'" (quoting *Buckman Co. v.*

*Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)). Pennsylvania does not dispute this point, arguing only that "no inconsistency exists" between its constitution and Federal law. JA156.

Notwithstanding a State's broad constitutional authority over the conduct of federal elections, including voters' privacy rights, Congress can override those state choices. U.S. Const. Art. I, § 4, Cl. 1. The Supreme Court has explained that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Ibid.* (brackets in original) (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)).

Congress enacted broad regulations over the conduct of federal elections. Title III imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962)

(*Lynd II*). Title III authorizes the Attorney General to compel records but imposes its own privacy protections for records and papers demanded under Section 20703. *See* 52 U.S.C. 20704. If the Pennsylvania Constitution imposes even greater privacy protections, they conflict with and thwart the enforcement of federal law and therefore are preempted. *See, e.g.*, *Glacier Nw., Inc. v. International Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023) ("It is a bedrock rule, of course, that federal law preempts state law when the two conflict.").

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order Pennsylvania to immediately produce the requested unredacted SVRL. This Court should make clear that Title III of the CRA authorizes the United States to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA, as set forth above.

Further, because the district court's final order has deprived the DOJ of the "prompt and expeditious inspection" that is required under Title III, the "mandate of this Court sh[ould] issue forthwith." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962); *see* Fed. R. App. P. 2, 41(b). A decision in the coming weeks would still allow the United States to assist Pennsylvania in taking real steps to clean up its SVRL, if necessary, prior to the upcoming November 3, 2026, general election.

In the alternative, and for the same reason, the United States requests that the Court shorten the time for filing a petition for rehearing and rehearing en banc. *See* Fed. R. App. P. 2, 40(d)(1).

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Joshua R. Zuckerman

ANDREW G. BRANIFF
DAVID N. GOLDMAN
JOSHUA R. ZUCKERMAN
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 333-0027

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rules 28.3(d) and 46.1(a), I hereby certify that I am exempt from the Third Circuit's bar admission requirement as I am a federal government attorney and Counsel for the United States in this appeal.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
Attorney

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 11904 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365. I further certify that a virus detection program, Crowdstrike (Version 7.39.21108.0.0), has been run on the electronic brief, and that no viruses were detected.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
Attorney

Date: September 8, 2026

## CERTIFICATE OF SERVICE

Pursuant to Local Rules 31.1(b)(1), (b)(3), and (c), I certify that on September 8, 2026, I electronically filed this brief using the Appellate CM/ECF system for the United States Court of Appeals for the Third Circuit, that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, and that seven paper copies, identical to the brief filed electronically, were sent to the Clerk of the Court by Federal Express.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
Attorney

Date: September 8, 2026