# United States Court of Appeals
*for the*
# Third Circuit

Case No. 26-2684

UNITED STATES OF AMERICA,

*Appellant,*

– v. –

SECRETARY OF STATE FOR THE COMMONWEALTH OF PENNSYLVANIA,

PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS; NICHOLAS MASTON; GREGORY PERRY; TODD THATCHER; JOEL DICKSON; TRISHA KENT; LIOR STERNFELD; JOHN THOMPSON; LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA; COMMON CAUSE; NATIONAL ASS'N FOR THE ADVANCEMENT OF COLORED PEOPLE; PENNSYLVANIA STATE CONFERENCE OF THE NAACP; STACEY TAYLOR,

*(Intervenors in D.C.)*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA IN NO. 2:25-cv-01481, HONORABLE CATHY BISSOON, CHIEF DISTRICT JUDGE

## BRIEF OF *AMICUS CURIAE* AMERICA FIRST POLICY INSTITUTE - PENNSYLVANIA IN SUPPORT OF APPELLANT AND REVERSAL

ANDREW ZIMMITTI
NICHOLAS J. WANIC
ISAAC LORING
AMERICA FIRST POLICY INSTITUTE
*Attorney for Amicus Curiae*
1455 Pennsylvania Avenue NW,
Suite 225
Washington, DC 20004
(703) 637-2548

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (396628)

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A) and 3d Cir. L.A.R. 26.1.1, amicus curiae America First Policy Institute—Pennsylvania states that it is a nonprofit, non-stock corporation; it has no parent corporation; no publicly held corporation owns ten percent or more of its stock; and amicus is not aware of any publicly held corporation, not a party, with a financial interest in the outcome of this appeal.

TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... iii

INTEREST OF AMICUS CURIAE .......... 1

ARGUMENT .......... 3

I. The Scale of the Election Integrity Problem .......... 4

II. The Congressionally Mandated Solution .......... 6

III. The Decision Below Leaves Pennsylvania's Voter Rolls Unmonitored and Exposed to Fraud .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

Cases:

*Bost v. Ill. State Bd. of Elections*,
607 U.S. 71 (2026) .......... 6

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021) .......... 6, 10

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008) .......... 6

*Husted v. A. Philip Randolph Inst.*,
584 U.S. 756 (2018) .......... 5, 7

*Judicial Watch, Inc. v. King*,
993 F. Supp. 2d 919 (S.D. Ind. 2012) .......... 8

*Judicial Watch, Inc. v. Lamone*,
399 F. Supp. 3d 425 (D. Md. 2019) .......... 10

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) .......... 9

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) .......... 8, 9-10

*Purcell v. Gonzalez,*
549 U.S. 1 (2006) .......... 5

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) .......... 8

Statutes & Other Authorities:

52 U.S.C. § 20501(b)(3) .......... 6

52 U.S.C. § 20501(b)(4) .......... 6

52 U.S.C. § 20507(a)(4) .......... 6

52 U.S.C. § 20507(c) .......... 6

52 U.S.C. § 20507(d) .......... 6

52 U.S.C. § 20507(i)(1) .......... 3, 6-7, 9

52 U.S.C. § 20510(a) ..........1, 8

52 U.S.C. § 20510(b) ..........8

52 U.S.C. § 20703 ..........3

52 U.S.C. § 21083(a)(1)(A)(i) ..........7

52 U.S.C. § 21083(a)(1)(A)(ii) ..........7

52 U.S.C. § 21083(a)(1)(A)(iii) ..........7

52 U.S.C. § 21083(a)(1)(A)(viii) ..........7

52 U.S.C. § 21083(a)(2)(A) ..........7

52 U.S.C. § 21083(a)(5) ..........7

52 U.S.C. § 21111 ..........1, 8

Dirk VanderHart, *Updated Findings Show Nearly 1,260 Possible Noncitizens Were Registered to Vote in Oregon Since 2021*, Or. Pub. Broad. (Sept. 23, 2024) ..........5

Fed. R. App. P. 29(a)(4)(E)(i) ..........1

Fed. R. App. P. 29(a)(4)(E)(ii) ..........1

Fed. R. App. P. 29(a)(4)(E)(iii) ..........1

Lydia Saad, *Partisan Split on Election Integrity Gets Even Wider*, Gallup (Sep. 25, 2024) ..........3

N.C. State Bd. of Elections, Press Release, *State Board Unanimously Approves Plan to Collect Missing Identification Numbers from Certain Voters* (June 24, 2025) ..........5

Pew Ctr. on the States, *Inaccurate, Costly, and Inefficient: Evidence That America's Voter Registration System Needs an Upgrade* (Feb. 2012) ..........5

Thad Kousser et al., Yankelovich Ctr. for Soc. Sci. Rsch., Univ. of Cal. San Diego, *Trust in American Elections Has Declined Since 2024* (2026) ..........3

## INTEREST OF AMICUS CURIAE[1]

America First Policy Institute—Pennsylvania ("AFPI") is a nonprofit, nonpartisan research institute that develops policy on election administration, public accountability, and protection of lawful voters. AFPI has published research, model legislation, implementation guidance, and commentary concerning voter identification, documentary proof of citizenship, voter-list maintenance, election observation, record retention, and public confidence. AFPI's work has addressed objective eligibility verification, accurate voter-registration records, and safeguards against administrative error.

AFPI has attempted to do that work in Pennsylvania by requesting the Commonwealth's list-maintenance records under the public-inspection provision of the National Voter Registration Act of 1993. The Pennsylvania Department of State denied AFPI's requests, and the Office of Open Records denied AFPI's administrative appeal. AFPI's appeals from that denial are pending. Further, AFPI moved to intervene in this matter as a party "aggrieved" under the NVRA and was denied.

AFPI submits this brief because its experience as a requester under the

---

[1] Undersigned counsel certifies that no one other than AFPI paid in whole or in part for the preparation of this amicus curiae brief or authored in whole or in part this brief. See Fed. R. App. P. 29(a)(4)(E)(i)-(iii). All parties have consented to its filing.

NVRA's public-inspection provision gives it a perspective the parties do not share. The NVRA's public-inspection right and the Attorney General's demand power under Title III of the Civil Rights Act of 1960 are the two mechanisms Congress has provided for ensuring that a State is accurately maintaining its voter rolls. The disposition of this case, in conjunction with the denial of AFPI's public channel requests, affects the practical availability of both congressionally mandated methods for voter roll accountability, which is a goal of paramount importance to the public interest.

ARGUMENT

Americans are increasingly losing trust in the electoral process. Recent polling has shown that only ~60% of Americans are confident that votes will be accurately recorded nationwide.[2] State voter lists have been at the center of much of the recent maelstrom, with allegations that poorly maintained lists full of inaccurate or ineligible records enable fraudulent votes. Congress recognized the importance of maintaining clean and accurate voter lists in both pieces of major legislation on the topic. The National Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA") impose affirmative duties on States to keep their official lists of eligible voters accurate and current. Congress paired these duties with two methods for ensuring accountability: a public-inspection right, 52 U.S.C. § 20507(i)(1); and enforcement by the Attorney General of the United States, §§ 20510(a), 21111, backed by his authority under Title III to demand underlying election records, § 20703. Congress created these channels because it realized that transparency promotes confidence.

---

[2] Thad Kousser et al., Yankelovich Ctr. for Soc. Sci. Rsch., Univ. of Cal. San Diego, *Trust in American Elections Has Declined Since 2024* (2026) (Available at: https://yankelovichcenter.ucsd.edu/public-engagement/CTTE-Report-2025-2026_2.17.pdf)
Lydia Saad, *Partisan Split on Election Integrity Gets Even Wider*, Gallup (Sep. 25, 2024) (Available at: https://news.gallup.com/poll/651185/partisan-split-election-integrity-gets-even-wider.aspx)

Unfortunately, the decision of the district court promotes the opposite. By holding that the statewide voter registration list ("SVRL") is not a "record" within the meaning of Title III and not subject to disclosure, the district court effectively disarmed the Attorney General from enforcing critical federal voter registration laws. Meanwhile, the Commonwealth blocked qualified members of the public (including amicus) from exercising their right to a congressionally mandated inspection of the Commonwealth's voter rolls. If the district court judgment stands, then the public will be deprived of vital, congressionally-mandated oversight because no one other than the Commonwealth will be able to verify whether federally mandated voter maintenance is occurring.

The district court's judgment therefore should be reversed.

## I. The Scale of the Election Integrity Problem

Confidence in the Nation's electoral system is of paramount public interest, and yet increasingly the subject is a matter of partisan division and deep distrust. The accuracy and reliability of state voter lists is often at the center of this national debate, and furor has been stoked by high profile examples of poor record keeping in violation of Federal law.

The United States Supreme Court has cited that an estimated 24 million voter registrations, one in eight nationwide, are "either invalid or significantly

inaccurate."[3] This includes 1.8 million registrations in the names of the dead and 2.75 million people registered in more than one State. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 760 (2018). This well documented problem has only gotten worse in the following years,[4] and the regular refusal from State governments including the Commonwealth to provide the public with transparent access or to cooperate with federal investigations only compounds the growing lack of public trust in the election system.

The Supreme Court has long recognized that "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006) (per curiam). The Court also

---

[3] Pew Ctr. on the States, *Inaccurate, Costly, and Inefficient: Evidence That America's Voter Registration System Needs an Upgrade* (Feb. 2012), cited in *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 760 (2018).

[4] For example, in Los Angeles County, a private NVRA request revealed general list-maintenance had not been conducted in roughly twenty years. The 2019 settlement agreement has resulted in 1,207,613 faulty registrations being removed. *Judicial Watch, Inc. v. Logan*, No. 2:17-cv-08948 (C.D. Cal.) (settlement Jan. 3, 2019). In Oregon, a public investigation discovered that 1,259 people had been registered to vote despite presenting foreign passports and other non-citizenship documents. Nine of these were found to have voted. Dirk VanderHart, *Updated Findings Show Nearly 1,260 Possible Noncitizens Were Registered to Vote in Oregon Since 2021*, Or. Pub. Broad. (Sept. 23, 2024). And in North Carolina, a federal enforcement action revealed that roughly 100,000 registration records lacked the driver's license or Social Security identifiers required by HAVA. *United States v. N.C. State Bd. of Elections*, No. [5:25-cv-00283] (E.D.N.C.) (consent judgment entered Sep. 8, 2025); N.C. State Bd. of Elections, Press Release, *State Board Unanimously Approves Plan to Collect Missing Identification Numbers from Certain Voters* (June 24, 2025).

has recognized that "the counting of unlawful votes—or discarding of lawful ones—erodes public confidence in election results and the elected representative," *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026), and that this form of election fraud "can also undermine public confidence in the fairness of elections and the perceived legitimacy of the announced outcome." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685–86 (2021). The Court also has endorsed the Carter-Baker Commission's judgment that an "electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008) (plurality opinion).

## II. The Congressionally Mandated Solution

Congress enacted the NVRA to increase voter registration rates, and in the same breath, "to protect the integrity of the electoral process" by "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)–(4). To that end, the NVRA requires the following critical functions: (1) Every state must "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of residence, § 20507(a)(4); (2) prescribe when and how a registrant may be removed, § 20507(c)–(d); and (3) keep and make public "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," §

20507(i)(1). The Supreme Court has read these provisions to reflect Congress's judgment that removing ineligible registrants is an obligation, not an option. *Husted,* 584 U.S. at 760–62.

In passing HAVA, Congress mandated the mechanism by which these requirements are carried out. Every State must maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list" that "contains the name and registration information of every legally registered voter in the State" and "assigns a unique identifier to each legally registered voter." § 21083(a)(1)(A)(i)–(iii). That list "shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." § 21083(a)(1)(A)(viii). And "[t]he appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis," removing ineligible registrants "in accordance with the provisions of the [NVRA]." § 21083(a)(2)(A). HAVA requires states to verify each applicant's driver's license number or last four Social Security digits against motor-vehicle and Social Security Administration records, § 21083(a)(5), precisely so that the list can be checked against other government data for duplicates and ineligible entries.

Congress paired these affirmative, continuing list maintenance duties with two verification mechanisms. The first method is a public inspection right. Section 20507(i)(1) requires states to make list-maintenance records "available for public

inspection," and § 20510(b) creates a cause of action for a "person who is aggrieved by a violation." Public interest organizations like amicus, researchers, civic organizations, political parties, and journalists are among those members of the public in the best position to serve as monitors of state compliance with the NVRA. *See, e.g.*, *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012). Through the private right of action under the NVRA, they have enforced the law and defeated state-law restrictions on access to list-maintenance information. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024); *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025).

The second method of verification that Congress mandated is federal inspection by the Attorney General of the United States. The NVRA authorizes the Attorney General to "bring a civil action . . . for such declaratory or injunctive relief as is necessary to carry out this chapter," § 20510(a), and HAVA assigns him the same enforcement role, § 21111.

These two mechanisms are complementary. The public channel enlists the interests, time and resources of the broader public while maintaining appropriate redactions to protect personal privacy rights. The federal channel, which falls upon the Attorney General to enforce, requires verification of the unique identifiers under HAVA. This is the only method through which it can be conclusively verified that deceased, duplicated, and ineligible records do not remain on a state's voter list

thereby enabling fraud or accidental error that undermines the public's trust.

## III. The Decision Below Leaves Pennsylvania's Voter Rolls Unmonitored and Exposed to Fraud.

Exercising its right under the NVRA, AFPI previously requested the Commonwealth's list-maintenance records under § 20507(i)(1), quoting the statute's operative language. The Department of State refused. *See America First Policy Institute v. Pennsylvania Department of State,* OOR Dkt. No. AP 2026-1015 (Pa. Off. Open Records April 4th, 2026). That refusal is now the subject of separate proceedings before the Commonwealth Court. *Am. First Pol'y Inst.-Pa. v. Pa. Dep't of State*, No. 1057 C.D. 2026 (Pa. Commw. Ct. filed July 24, 2026).

With amicus's inspection of the Commonwealth's list-maintenance records side-lined in separate litigation, the district court's judgment in this case becomes particularly important because it closes off the only other verification mechanism under the NVRA. It therefore is critical that this Court reaffirm the right of the Attorney General to inspect the Commonwealth's list-maintenance records, which extends to the state voter registration list. Amicus agrees with the Attorney General that the state voter registration list is properly a record within the meaning of Title III and should be subject to disclosure.[5]

[5] The NVRA's provisions use the same term for "record" as Title III and courts have regularly applied the provision to state registration lists and databases, even though they are continuously updated. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336–39 (4th Cir. 2012); *Pub. Int. Legal Found., Inc. v.*

Denying the Attorney General the right to inspect the SVRL is a blow to the public's right to ensure election transparency guaranteed by Congress. The Commonwealth will hold a general election on November 3, 2026, on rolls that no one outside the Department of State has been permitted to examine. If the district court's judgment stands, the public's confidence in those elections will rest on the Commonwealth's assurance and nothing more, giving rise to the very distrust in our elections about which the Supreme Court warned. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021).

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed and the case remanded with instructions to order production of the unredacted SVRL.

Respectfully submitted this 15th day of September, 2026.

*s/ Andrew Zimmitti*

*Andrew Zimmitti*
America First Policy Institute,
1455 Pennsylvania Ave. NW
Suite 225
Washington, D.C. 20004
(703) 755-0944
AZimmitti@americafirstpolicy.com
*Attorney for Amicus Curiae*

*Bellows*, 92 F.4th 36, 44-52 (1st Cir. 2024); *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019).

*Nicholas J. Wanic*
America First Policy Institute,
1455 Pennsylvania Ave. NW
Suite 225
Washington, D.C. 20004
(779) 396-0137
NWanic@americafirstpolicy.com

*Of Counsel*

*Isaac A. Loring*
America First Policy Institute,
1455 Pennsylvania Ave. NW
Suite 225
Washington, D.C. 20004
(571) 267-9672
ILoring@americafirstpolicy.com

*Of Counsel*

CERTIFICATE OF BAR MEMBERSHIP

I certify pursuant to 3d Cir. L.A.R. 28.3(d) and Rule 46.1 that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Respectfully submitted this 15th day of September, 2026.

*s/ Andrew Zimmitti*

*Andrew Zimmitti*
America First Policy Institute,
1455 Pennsylvania Ave. NW
Suite 225
Washington, D.C. 20004
(703) 755-0944
AZimmitti@americafirstpolicy.com
*Attorney for Amicus Curiae*

CERTIFICATE OF COMPLIANCE AND VIRUS SCAN

I, Andrew Zimmitti, hereby certify as follows:

1. The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Rule 32(a)(6) because the brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font;

2. The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5), because it contains 2,114 words, excluding those parts of the brief excluded by Fed. R. App. R. 32(f).

3. Pursuant to 3d Cir. L.A.R. 31.1(c), the text of the electronic brief is identical to the text of the paper copies, and the electronic file was scanned for viruses using SentinelOne software Version 24.2 and found to be virus-free.

Respectfully submitted this 15th day of September, 2026.

*s/ Andrew Zimmitti*

# CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2026, the foregoing brief was filed via CM/ECF, which will serve all counsel of record, and caused 7 paper copies to be delivered to the Clerk in accordance with 3d Cir. L.A.R. 31.1(a).

Respectfully submitted this 15th day of September, 2026.

*s/ Andrew Zimmitti*