No. 26-2684

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

UNITED STATES OF AMERICA
*Plaintiff-Appellant,*

v.

SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA,
*Defendant-Appellee*,

PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS; NICHOLAS MASTON; GREGORY PERRY; TODD THATCHER; JOEL DICKSON; TRISHA KENT; LIOR STERNFELD; JOHN THOMPSON; LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA; COMMON CAUSE; NATIONAL ASS'N FOR THE ADVANCEMENT OF COLORED PEOPLE; PENNSYLVANIA STATE CONFERENCE OF THE NAACP; STACEY TAYLOR
*Intervenor-Defendants in D.C.-Appellees.*

U.S. District Court W.D. Pa. No. 2:25-cv-1481 (Pa. – Pittsburgh)

# BRIEF FOR SECRETARY OF THE COMMONWEALTH

CAROLYN A. DELAURENTIS
Chief Counsel
KATHLEEN A. MULLEN
Executive Deputy Chief Counsel
Pennsylvania Department of State
306 North Office Bldg.
401 North Street
Harrisburg, PA 17120-0500

JENNIFER SELBER
General Counsel
MICHAEL J. FISCHER
Executive Deputy General Counsel
AIMEE D. THOMSON
Deputy General Counsel
Office of General Counsel
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov

November 20, 2026

*Counsel for Secretary of the Commonwealth Al Schmidt*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

COUNTERSTATEMENT OF JURISDICTION .......... 1

COUNTERSTATEMENT OF ISSUES .......... 1

RELATED ISSUES & PROCEEDINGS .......... 2

INTRODUCTION .......... 3

COUNTERSTATEMENT OF THE CASE .......... 7

I. DOJ's requests to Secretary Schmidt. .......... 7

II. DOJ's lawsuits against Secretary Schmidt and other state election officials. .......... 10

III. DOJ's Voter List Maintenance Policy. .......... 16

SUMMARY OF THE ARGUMENT .......... 20

STANDARD OF REVIEW .......... 23

ARGUMENT .......... 24

I. The District Court lacked subject matter jurisdiction over DOJ's Title III claim. .......... 24

II. The Pennsylvania Constitution prevents disclosure of voters' PII, as DOJ has conceded. .......... 30

III. The District Court correctly dismissed DOJ's Title III claim. .......... 33

A. Title III does not displace the Federal Rules of Civil Procedure or eliminate meaningful judicial review. .......... 33

B. DOJ did not provide a sufficient "basis" and "purpose" for its demand. .......... 38

1. Evaluating compliance with the NVRA is not a valid basis or purpose. .......... 42

2. Evaluating compliance with HAVA is not a valid basis or purpose. .......... 45

3. Evaluating Pennsylvania's EAVS responses is not a valid basis.....51

C. Pennsylvania's statewide voter registration list is not a "record.".....52

D. Title III does not require electronic disclosure.....56

E. Title III does not prohibit redactions of sensitive personal information.....58

IV. DOJ's demand would violate the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act.....61

CONCLUSION.....65

# TABLE OF AUTHORITIES

## Cases

*Allegheny Reprod. Health Ctr. v. Pa. DHS*, 309 A.3d 808 (Pa. 2024) .......... 31

*Am. C.R. Union v. Phila. City Comm'ners*, 872 F.3d 175 (3d Cir. 2017) .......... 43

*American Oversight v. DOJ*, 45 F.4th 579 (2d Cir. 2022) .......... 63

*Applewhite v. Com.*, 2014 WL 184988 (Pa. Commw. Ct. Jan. 17, 2014) .......... 49

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) .......... 27

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) .......... 32

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136 (3d Cir. 2017) .......... 53

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) .......... 43, 44

*Beltz v. Erie Indem. Co.*, 733 F. App'x 595 (3d Cir. 2018) .......... 25

*Brentwood at Hobart v. N.L.R.B.*, 675 F.3d 999 (6th Cir. 2012) .......... 26

*Common Cause v. DOJ*, No. 26-cv-1352, 2026 WL 3033772 (D.D.C. Oct. 9, 2026) .......... passim

*Commonwealth v. Nixon*, 761 A.2d 1151 (Pa. 2000) .......... 31

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .......... 41

*Donaldson v. United States*, 400 U.S. 517 (1971) .......... 37, 38

*EPIC v. Pres. Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) .......... 64

*Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) .......... 47

*Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019) .......... 27

*Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324 (11th Cir. 2024) .......... 56, 57, 58

*Henderson v. United States*, 517 U.S. 654 (1996) .......... 26

*In re Aquilino*, 135 F.4th 119 (3d Cir. 2025) .......... 53

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) .......... 61

*In re Duncan*, 713 F.2d 538 (9th Cir. 1983) .......... 29

*Judicial Watch, Inc. v. Illinois State Bd. of Elections*, 2025 WL 2712209 (N.D. Ill. Sept. 23, 2025) .......... 44

*Judicial Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399 (M.D. Pa. 2021) .......... 43

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .......... 33, 60

*Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89 (3d Cir. 2011) .......... 23

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) .......... 26

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3d Cir. 2015) .......... 24

*McLinko v. Pennsylvania*, 349 A.3d 241 (Pa. Comm. Ct. Oct. 20, 2025) .......... 48

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939) .......... 26

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994) ... 23

*PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598 (Pa. Comm. Ct. 2025) ... 48

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120 (3d Cir. 2024) ... 54

*Pa. State Educ. Ass'n (PSEA) v. Com. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142 (Pa. 2016) ... 31, 32

*Panama R. Co. v. Johnson*, 264 U.S. 375 (1924) ... 29, 30

*Polselli v. Internal Revenue Serv.*, 598 U.S. 432 (2023) ... 37

*Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316 (3d Cir. 2020) ... 31

*Project Vote v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010) ... 59

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ... 43, 44

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ... 59

*Pure Oil Co. v. Suarez*, 384 U.S. 202 (1966) ... 28

*Rossman v. Pa. Dep't of State*, 352 A.3d 561 (Pa. Comm. Ct. Dec. 8, 2025) ... 48

*Spireas v. Comm'r of Internal Revenue*, 886 F.3d 315 (3d Cir. 2018) ... 25

*State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ... 40

*Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179 (3d Cir. 2008 .......... 23

*Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004) .......... 39

*Transcapital Leasing Assocs., 1990-II, L.P. v. United States*, 398 F.3d 1317 (Fed. Cir. 2005) .......... 29, 30

*Tribune-Review Pub. Co. v. Bodack*, 961 A.2d 110 (Pa. 2008) .......... 31

*United States v. Adams*, 837 F. Supp. 3d 881 (E.D. Ky. 2026) .......... 16, 34, 39, 52

*United States v. Aguilar*, No. 25-cv-00728, 2026 WL 2364502 (D. Nev. Aug. 14, 2026) .......... passim

*United States v. Albence*, No. 25-cv-01453, 2026 WL 3407115 (D. Del Nov. 10, 2026) .......... 2, 16, 34, 53

*United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026) .......... 15, 39, 40

*United States v. Bd. of Elec. of N.Y.*, No. 25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026) .......... 15, 34, 52

*United States v. Bellows*, 834 F. Supp. 3d 113 (D. Me. 2026) .......... 15, 39, 52

*United States v. Benson*, 179 F.4th 470 (6th Cir. 2026) .......... passim

*United States v. Benson*, 187 F.4th 462 (6th Cir. 2026) .......... 15, 38

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026) .......... 15

*United States v. Benson*, No. 26A626 (U.S.) .......... 15

*United States v. Bisceglia*, 420 U.S. 141 (1975) .......... 35

*United States v. Caldwell*, No. 26-cv-2025, 2026 WL 2186515 (D.N.J. July 29, 2026) .......... 2, 16, 34, 52

*United States v. DeMarinis*, No. 25-3934, 2026 WL 1780586 (D. Md. June 18, 2026) .......... 15, 34, 52

*United States v. Evans*, No. 25-cv-4403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026) .......... 16, 34, 52

*United States v. Fontes*, 832 F. Supp. 3d 944 (D. Ariz. 2026) .......... 15, 34, 52

*United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026) .......... 15, 39, 40

*United States v. Griswold*, No. 25-cv-03967, 2026 WL 2235374 (D. Colo. Aug. 3. 2026) .......... 16, 34, 52

*United States v. Hanzas*, No. 25-cv-903, 2026 WL 2754349 (D. Vt. Sept. 17, 2026) .......... passim

*United States v. Henderson,* No. 26-cv-00166, 2026 WL 3181405 (D. Utah Oct. 23, 2026) .......... 16, 27, 34, 53

*United States v. Hobbs*, No. 25-cv-6078, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026) .......... 16, 34, 53

*United States v. Koski*, No. 26-cv-42, 2026 WL 2032532 (E.D. Va. July 14, 2026) .......... 15, 34, 52

*United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026) .......... passim

*United States v. McGrane*, No. 26-cv-00197 (D. Idaho) .......... 2

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .......... 36

*United States v. Nago*, No. 25-cv-00522 (D. Haw.) .......... 2

*United States v. Oliver*, No. 25-cv-01193, 2026 WL 2031479 (D.N.M. July 14, 2026) ........ 15, 34, 39, 40

*United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Ore. 2026) ........ passim

*United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005) ........ 42, 46

*United States v. Powell*, 379 U.S. 48 (1964) ........ 34, 35, 36

*United States v. Raffensperger*, No. 25-cv-00548, 2026 WL 184233 (M.D. Ga. Jan. 23, 2026) ........ 27

*United States v. Raffensperger*, No. 26-cv-00485, 2026 WL 3002013 (N.D. Ga. Sept. 30, 2026) ........ 16, 27, 31, 34

*United States v. Rockwell Int'l*, 897 F.2d 1255 (3d Cir. 1990) ........ passim

*United States v. Scanlan*, 838 F. Supp. 3d 150 (D.N.H. 2026) ........ 15, 34, 39, 52

*United States v. Servin*, 721 F. App'x 156 (3d Cir. 2018) ........ 28

*United States v. Simon*, No. 25-cv-3761, 2026 WL 2389778 (D. Minn. Aug. 17, 2026) ........ 16, 34, 52

*United States v. Thomas*, No. 26-cv-21, 2026 WL 2070437 (D. Conn. July 17, 2026) ........ 16, 52

*United States v. Warner*, 840 F. Supp. 3d 446 (S.D. W. Va. 2026) ........ passim

*United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026) ........ 15, 34, 39, 41

*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980) ........ 36

*United States v. Wisc. Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wisc. 2026) ............ 15, 52

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ............ 26

*Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264 (W.D. Wa. 2006) ............ 48

*Webster v. Doe*, 486 U.S. 592 (1988) ............ 37

*Xi v. Haugen*, 68 F.4th 824 (3d Cir. 2023) ............ 23

**Constitutional Provisions**

Pa. Const. art. I, § 1 ............ 31

U.S. Const. art. I, § 4, cl. 1 ............ 3, 32

**Statutes**

18 U.S.C. § 1512 ............ 55

18 U.S.C. § 2721 ............ 65

25 P.S. § 3050 ............ 49

25 P.S. § 3146.2b ............ 49

25 P.S. § 3150.12b ............ 49

25 Pa.C.S. § 1201 ............ 7

25 Pa.C.S. § 1203 ............ 7

25 Pa.C.S. § 1222 ............ 7, 54, 55

25 Pa.C.S. § 1328 ............ 7, 48, 50, 55

25 Pa.C.S. § 1505 ............ 45, 55

25 Pa.C.S. § 1505 ............ 7

25 Pa.C.S. § 1901 ........ 7, 55

26 U.S.C. § 7402 ........ 27, 28, 34, 37

26 U.S.C. § 7604 ........ 28, 34, 37

28 U.S.C. § 1291 ........ 1

28 U.S.C. § 1391 ........ 24, 25

28 U.S.C. § 1404 ........ 13

28 U.S.C. § 1406 ........ 13

28 U.S.C. § 1631 ........ 13

44 U.S.C. § 3518 ........ 64

5 U.S.C. § 552a ........ 62

52 U.S.C. § 10101 ........ 54

52 U.S.C. § 20507 ........ passim

52 U.S.C. § 20510 ........ 59

52 U.S.C. § 20701 ........ passim

52 U.S.C. § 20702 ........ 55

52 U.S.C. § 20703 ........ passim

52 U.S.C. § 20704 ........ 32, 33

52 U.S.C. § 20705 ........ passim

52 U.S.C. § 21083 ........ passim

52 U.S.C. § 21111 ........ 9

Pub. L. No. 107-347, 116 Stat. 2899 (2002) ........ 63

Pub. L. No. 93-579, 88 Stat. 1896 (1974) .......... 61

**Rules**

Fed. R. Civ. P. 1 .......... 35

Fed. R. Civ. P. 81 .......... 35

**Other Authorities**

14D Wright & Miller, *Federal Practice and Procedure: Jurisdiction* § 3801 (4th ed. Sept. 2025 update) .......... 26

5A Wright & Miller, *Federal Practice and Procedure: Civil 2d,* § 1357 .......... 23

68 Fed. Reg. 47610 (Aug. 11, 2003) .......... 62

90 Fed. Reg. 48948 (Oct. 31, 2025) .......... 18

DHS, *Private Impact Assessment for the Systematic Alien Verification for Entitlements "SAVE" Program* (Oct. 31, 2025) .......... 18

E.O. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025) .......... 16, 17

ERIC, *What is ERIC?* .......... 50

GAO, *Immigration Status Verification For Benefits – Actions Needed to Improve Effectiveness and Oversight* (Mar. 2017) .......... 18

H.R. Rep. No. 86-956 (1959) .......... 40

Jack Friedman & Wren Orey, *Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, MIT Election Data & Science Lab (Oct. 1, 2026) .......... 19

Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025) ........ 19

Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle,* N.Y. Times (Sept. 24, 2026) ........ 19

OMB, Circular No. A-108 (Dec. 2016) ........ 62

OMB, Mem. M-03-22 (Sept. 26, 2003) ........ 64

Pa. Dep't of State, *Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly* (June 30, 2025) ........ 8, 49, 50

Pa. Dep't of State, *Directive Concerning HAVA — Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications* (2018) ........ 48

Pa. Dep't of State, *PA Full Voter Export* ........ 10

Pennsylvania Voter Registration Application & Mail-In Ballot Request ........ 47

Presidential Statement on Signing the Civil Rights Act of 1960 (May 6, 1960) ........ 40

U.S. Election Assist. Comm'n, *Studies and Reports* (Aug. 11, 2025) ........ 9

USCIS, *Voter Registration and Voter List Maintenance Fact Sheet* (Aug. 27, 2025) ........ 18

## COUNTERSTATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over this appeal from a final judgment of the District Court dismissing Count I, which alleges a violation of Title III of the Civil Rights Act of 1960. The District Court lacked subject matter jurisdiction over Count I. *See* 52 U.S.C. § 20705. Appellant has not appealed the dismissal of Counts II and III. Br. for United States at 13, Doc. 37 (Sept. 8, 2026).

## COUNTERSTATEMENT OF ISSUES

1. Whether 52 U.S.C. § 20705 deprives the Western District of Pennsylvania of subject-matter jurisdiction over Count I?

2. Whether the Pennsylvania Constitution operates harmoniously with Title III and prevents disclosure of voters' partial social security numbers and driver's license numbers?

3. Whether the Attorney General failed to provide a sufficient "basis" and "purpose" for his demand, as required by 52 U.S.C. § 20703?

4. Whether the Attorney General's demand violates other federal privacy laws?

## RELATED ISSUES & PROCEEDINGS

Appellant has brought similar claims against 29 other states and the District of Columbia. Two of these suits are in this Circuit. *United States v. Caldwell*, No. 26-cv-2025, 2026 WL 2186515 (D.N.J. July 29, 2026), *appeal docketed*, No. 26-3085 (3d Cir. Aug. 20, 2026); *United States v. Albence*, No. 25-cv-01453, 2026 WL 3407115 (D. Del Nov. 10, 2026). One has been dismissed by the U.S. Court of Appeals for the Sixth Circuit and is pending a writ of certiorari to the U.S. Supreme Court. *See infra* at 15 n.6. Twenty-four have been dismissed in the district courts and are pending before the respective Court of Appeals. *Id.* One additional suit has been dismissed in the district court but has not been appealed. *Id.* Two are stayed in the district court. *United States v. McGrane*, No. 26-cv-00197 (D. Idaho); *United States v. Nago*, No. 25-cv-00522 (D. Haw.).

## INTRODUCTION

The U.S. Constitution empowers Pennsylvania to prescribe the "Times, Places and Manner" of holding federal elections, subject to the power of Congress to make or alter such regulations. U.S. Const. art. I, § 4, cl. 1. Congress exercised this power through the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA), requiring Pennsylvania to maintain and administer a computerized statewide voter registration list (SVRL) and to conduct regular list maintenance to ensure accurate voter rolls. The Pennsylvania Department of State, under the leadership of Secretary of the Commonwealth Al Schmidt, works diligently with the Commonwealth's 67 counties to help them ensure that all electoral processes are fully compliant with federal and Pennsylvania laws.

The Department of Justice (DOJ) sought to usurp the authority Congress granted Pennsylvania. It demanded complete and unfettered access to Pennsylvania's SVRL—ostensibly to ensure that Pennsylvania is conducting a general program of list maintenance, but without any allegation that Pennsylvania's list maintenance practices are deficient. Although Secretary Schmidt offered Pennsylvania's public voter file,

which includes many data fields, DOJ insisted that it must receive the driver's license number or partial Social Security number ("DLN" and "SSN4" respectively; together, "PII") for Pennsylvania's more than 8.9 million voters.

When Secretary Schmidt refused to provide these two highly sensitive personal identifiers, DOJ sued, bringing claims under the NVRA, HAVA, and Title III of the Civil Rights Act of 1960. Secretary Schmidt moved to dismiss all three claims. In its opposition brief, DOJ did not dispute—and therefore conceded—many of Secretary Schmidt's key arguments.

Among other things, Secretary Schmidt explained why, as a legal and practical matter, DOJ does not need a static snapshot of voters' PII to ensure that Pennsylvania is complying with its statutory obligations under the NVRA and HAVA; DOJ did not refute these points. Secretary Schmidt argued that the District Court lacked subject matter jurisdiction (as determined by 52 U.S.C. § 20705) over DOJ's Title III claim; DOJ agreed that 52 U.S.C. § 20705 governs jurisdiction here. And Secretary Schmidt asserted that Pennsylvania voters enjoy robust informational privacy protections under the Pennsylvania Constitution that do not

conflict with federal election laws and that prevent Secretary Schmidt from disclosing voters' PII; DOJ did not respond to this argument at all.

The District Court held that it lacked jurisdiction over the Title III claim and dismissed the NVRA and HAVA claims on the merits. DOJ has chosen to appeal only the dismissal of its Title III claim—therefore waiving any argument that it requires voters' PII to determine Pennsylvania's compliance with the NVRA and HAVA. DOJ has also forfeited any argument that federal law preempts Pennsylvania constitutional privacy protections or that 52 U.S.C. § 20705 concerns venue rather than jurisdiction.

DOJ's arguments on appeal are also wrong. Only the Middle District Court has jurisdiction under 52 U.S.C. § 20705, which speaks to the power of federal courts to enforce an Attorney General demand. The Pennsylvania Constitution protects voters' PII from disclosure and has not been preempted by Title III. Nothing in Title III displaces the Federal Rules of Civil Procedure or requires federal courts to abandon basic judicial review. The Attorney General's demand is legally insufficient because he did not provide both "the basis" and "the purpose," because he is not investigating a voting rights violation, and because voters' PII is

not relevant to his stated bases and purposes. Pennsylvania's SVRL is also not a "record" the Attorney General can use Title III to obtain; but if it were, Title III does not require its electronic disclosure or prohibit redactions of sensitive personally identifying information. Finally, enforcing the Attorney General's demand would violate other federal privacy laws.

This Court should affirm.

## COUNTERSTATEMENT OF THE CASE

In Pennsylvania, the Department of State and county officials have distinct roles in voter registration. The Department administers the Statewide Uniform Registry of Electors or SURE system, which contains Pennsylvania's SVRL. 25 Pa.C.S. §§ 1201(3), 1222. Counties review and approve voter registration applications and conduct list maintenance. *Id.* §§ 1203, 1328, 1505, 1901.

### I. DOJ's requests to Secretary Schmidt.

On June 23, 2025, DOJ wrote to Secretary Schmidt asking for 14 categories of information about how Pennsylvania complies with the list maintenance requirements of HAVA. JA194-96.

On July 23, 2025, Secretary Schmidt explained in response that while local election officials are responsible for maintaining their voter lists, the Department works diligently with the Commonwealth's 67 counties to help them ensure that all electoral processes are fully compliant with federal and Pennsylvania laws, including HAVA. JA198-208. He provided detailed responses to each question and referred DOJ to the Department's most recent report on voter registration in Pennsylvania, which comprehensively addresses voter list maintenance

programs in the Commonwealth. Pa. Dep't of State, *Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly* (June 30, 2025) (hereinafter "DOS 2024 VR Report").[1] The letter also explained that HAVA leaves verification of SSN4 and DLN to the States, 52 U.S.C. § 21083(a)(5)(A)(iii), and Pennsylvania law does not allow denying a voter registration application solely for failure to match an ID number. JA205-06.

DOJ did not respond to Secretary Schmidt's letter. Instead, on August 4, 2025, DOJ wrote to Secretary Schmidt with questions about how Pennsylvania complies with the list maintenance requirements of the NVRA. JA210-12. Relying on Section 8(i) of the NVRA, 52 U.S.C. § 20507(i), DOJ requested the "current electronic copy of the Commonwealth of Pennsylvania's computerized statewide voter registration list," with "all fields contained with the list." JA210. DOJ also asked about the Department's responses to the 2024 U.S. Election Assistance Commission's Election Administration and Voting Survey,

---

[1] https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

known as EAVS. JA211; *see* U.S. Election Assist. Comm'n, *Studies and Reports* (Aug. 11, 2025) (2024 report published June 30, 2025).[2]

Before Secretary Schmidt could respond, DOJ wrote again on August 14, 2025, to clarify that "the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." JA221. For the first time, DOJ asserted that it sought these records under HAVA Section 401 (52 U.S.C. § 21111) and Title III of the Civil Rights Act of 1960 (52 U.S.C. § 20703). JA221-22. DOJ stated that the "purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." JA222.

On August 18, 2025, Secretary Schmidt responded to DOJ's August 4 letter, JA214-19, explaining that most of DOJ's questions about EAVS misunderstood the data or misrepresented the Department's response. JA215-19.

---

[2] https://www.eac.gov/research-and-data/studies-and-reports.

On August 21, 2025, Secretary Schmidt responded to DOJ's request for statewide voter registration data. JA225-27. He offered to provide DOJ with Pennsylvania's Full Voter Export, which is available through the Department's website. JA225; *see* Pa. Dep't of State, *PA Full Voter Export*.[3] It includes all voters in the Commonwealth (with certain limited exceptions for crime victims and other voters whose identities are kept confidential by law) and contains the following fields: voter ID number, name, sex, date of birth, date registered, status (i.e., active or inactive), date status last changed, party, residential address, mailing address, polling place, date last voted, all districts in which the voter votes, voter history, and date the voter's record was last changed. *Id.* But Secretary Schmidt declined to provide voters' PII because DOJ lacked legal authority for such a broad collection of highly sensitive, private information. JA226.

## II. DOJ's lawsuits against Secretary Schmidt and other state election officials.

DOJ did not respond to Secretary Schmidt's August letters. Instead, it filed a complaint against Secretary Schmidt on September 25,

[3] https://www.pavoterservices.pa.gov/pages/PurchasePAFullVoterExport.aspx.

2025, bringing claims under the NVRA, HAVA, and Title III.[4] The complaint alleged jurisdiction under 52 U.S.C. § 20705 and proper venue under 28 U.S.C. § 1391(b). JA43 (Compl. ¶¶ 4-5). DOJ acknowledged that Secretary Schmidt provided "explanations to the Attorney General's EAVS requests" and did not allege that these responses were incomplete or unsatisfactory. JA51 (Compl. ¶ 38). DOJ sought an order that Secretary Schmidt provide DOJ with the "current electronic copy of Pennsylvania's computerized statewide voter registration list, with all fields." JA56 (Compl. at 16). The only fields that Secretary Schmidt has declined to provide are voters' SSN4 and DLNs. JA52 (Compl. ¶ 43).

Three groups of individuals and organizations moved to intervene as defendants and to dismiss.[5] DOJ initially opposed these interventions

---

[4] DOJ originally sued the Commonwealth of Pennsylvania as well, JA44 (Compl. ¶ 7), but the District Court dismissed the Commonwealth as a party, JA35 (Doc. 105).

[5] The "Maston Intervenors" are Nicholas Maston, Gregory Perry, Todd Thatcher, Joel Dickson, Trisha Kent, Lior Sternfeld, John Thompson, the League of Women Voters of Pennsylvania, and Common Cause. The "Alliance Intervenors" are Pennsylvania Alliance for Retired Americans and Mike Crossey. The "NAACP Intervenors" are the National Association for the Advancement of Colored People, the NAACP Pennsylvania State Conference, and Stacey Taylor.

but reversed position, and the District Court granted the motions to intervene on January 16, 2026. JA35 (Doc. 105).

On December 16, 2025, Secretary Schmidt filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. Among other things, Secretary Schmidt argued that: DOJ failed to state a claim under the NVRA or HAVA because DOJ does not need voters' PII to evaluate Pennsylvania's compliance with either statute (JA143-47, 149-52); the District Court lacked subject matter jurisdiction under 52 U.S.C. § 20705 to adjudicate DOJ's Title III claim (JA153); DOJ failed to identify the basis and the purpose in its demand to Secretary Schmidt as required by 52 U.S.C. § 20703 (JA154); and the Pennsylvania constitutional privacy protections operate harmoniously with the NVRA, HAVA, and Title III to prevent disclosure of voters' highly sensitive personally identifying information (JA155-56). The Intervenor-Defendants also filed motions to dismiss.

On January 12, 2026, DOJ filed its omnibus brief in opposition to the motions to dismiss. In it, DOJ did not dispute Secretary Schmidt's explanations that voters' PII are not necessary to ensure Pennsylvania's compliance with the NVRA and HAVA. *See* JA178-81, 188-90. Nor did

DOJ address (much less dispute) Secretary Schmidt's arguments about Pennsylvania's constitutional protections. *Cf.* JA160-92. But DOJ did recognize that 52 U.S.C. § 20705 is jurisdictional and argued that jurisdiction was proper in the Western District. JA182-83. DOJ further claimed that the August 14 letter, alone, contained the Attorney General's Title III demand, JA179, which satisfied 52 U.S.C. § 20703 because it stated, "the purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA," JA180-81. On January 30, 2026, Secretary Schmidt and the Intervenor-Defendants filed reply briefs.

On January 29, 2026, DOJ moved under 28 U.S.C. §§ 1404 and 1406 to transfer venue to the Middle District of Pennsylvania. Without acknowledgement of or explanation for its change in position, DOJ assumed that 52 U.S.C. § 20705 determined venue, not jurisdiction. JA275 & n.1. In response, Secretary Schmidt agreed that the Middle District was the only forum with subject matter jurisdiction, but explained that the appropriate transfer vehicle was 28 U.S.C. § 1631, which gives district courts discretion to transfer a case if there is a want of jurisdiction and if doing so is in the interest of justice.

On June 27, 2026, the District Court granted the motions to dismiss. The District Court held that DOJ had "failed to demonstrate entitlement to Pennsylvania voters' personal identifiers under the NVRA and HAVA" and dismissed those claims with prejudice. JA4. The District Court further held that it lacked subject matter jurisdiction over DOJ's Title III claim. JA4-5. But assuming it had subject matter jurisdiction, the District Court found that unredacted voter files are not "records" for purposes of Title III and DOJ's demand for voter files did not contain "a statement of the basis and the purpose" required by 52 U.S.C. § 20703. JA2-3 (citing *United States v. Benson*, 179 F.4th 470 (6th Cir. 2026)). Finally, the District Court denied DOJ's motion to transfer venue to the Middle District. JA4-5.

On July 6, 2026, DOJ noticed this appeal, seeking review only of whether 52 U.S.C. § 20705 deprived the District Court of jurisdiction and whether the District Court erred in dismissing the Title III claim. Doc. 27 (DOJ Concise Summary of the Case) (July 21, 2026). DOJ has not appealed the dismissal of its NVRA and HAVA claims. Br. for United States at 3, 13, Doc. 37 (Sept. 8, 2026) ("DOJ Br.").

DOJ has brought similar lawsuits against state election officials in 29 other states and the District of Columbia. To date, every court to issue a decision—28 district courts and one appellate court—has rejected DOJ's efforts to compel production of complete and unredacted SVRLs under Title III, the NVRA, and HAVA.[6]

---

[6] *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th Cir. 2026) ("*Benson II*"), *reh'g en banc denied*, 187 F.4th 462 (6th Cir. 2026) ("*Benson III*"), *app. for extension of time to file petition for writ of certiorari granted*, No. 26A626 (U.S.); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Ore. 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Fontes*, 832 F. Supp. 3d 944 (D. Ariz. 2026), *appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026); *United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026), *appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026); *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026); *United States v. Bellows*, 834 F. Supp. 3d 113 (D. Me. 2026), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); *United States v. Wisc. Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wisc. 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. DeMarinis*, No. 25-3934, 2026 WL 1780586 (D. Md. June 18, 2026), *appeal docketed*, No. 26-1878 (4th Cir. July 13, 2026); *United States v. Scanlan*, 838 F. Supp. 3d 150 (D.N.H. 2026), *appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026); *United States v. Bd. of Elec. of N.Y.*, No. 25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026), *appeal docketed*, No. 26-2060 (2d Cir. July 24, 2026); *United States v. Warner*, 840 F. Supp. 3d 446 (S.D. W. Va. 2026), *appeal docketed*, No. 26-2262 (4th Cir. Sept. 15, 2026); *United States v. Koski*, No. 26-cv-42, 2026 WL 2032532 (E.D. Va. July 14, 2026), *appeal docketed*, No. 26-2002 (4th Cir. July 29, 2026); *United States v. Oliver*, No. 25-cv-01193, 2026 WL 2031479 (D.N.M. July 14, 2026), *appeal docketed*, No. 26-2126 (continued…)

## III. DOJ's Voter List Maintenance Policy.

On March 25, 2025, the President issued an Executive Order on elections. E.O. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025).[7] That order requires the Department of Homeland Security (DHS) and the

---

(10th Cir. July 27, 2026); *United States v. Thomas*, No. 26-cv-21, 2026 WL 2070437 (D. Conn. July 17, 2026), *appeal docketed*, No. 26-2064 (2d Cir. July 28, 2026); *United States v. Adams*, 837 F. Supp. 3d 881 (E.D. Ky. 2026), *appeal docketed*, No. 26-5657 (6th Cir. July 24, 2026); *United States v. Caldwell*, No. 26-cv-2025, 2026 WL 2186515 (D.N.J. July 29, 2026), *appeal docketed*, No. 26-3085 (3d Cir. Aug. 20, 2026); *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026), *appeal docketed*, No. 26-2695 (7th Cir. Aug. 17, 2026); *United States v. Griswold*, No. 25-cv-03967, 2026 WL 2235374 (D. Colo. Aug. 3. 2026), *appeal docketed*, No. 26-1326 (10th Cir. Aug. 18, 2026); *United States v. Evans*, No. 25-cv-4403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026), *appeal docketed*, No. 26-5296 (D.C. Cir. Aug. 19, 2026); *United States v. Aguilar*, No. 25-cv-00728, 2026 WL 2364502 (D. Nev. Aug. 14, 2026), *appeal docketed*, No. 26-5375 (9th Cir. Aug. 20, 2026); *United States v. Simon*, No. 25-cv-3761, 2026 WL 2389778 (D. Minn. Aug. 17, 2026), *appeal docketed*, No. 26-2679 (8th Cir. Aug. 21, 2026); *United States v. Hanzas*, No. 25-cv-903, 2026 WL 2754349 (D. Vt. Sept. 17, 2026), *appeal docketed*, No. 26-3185 (2d Cir. Nov. 4, 2026); *United States v. Hobbs*, No. 25-cv-6078, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026), *appeal docketed*, No. 26-7368 (9th Cir. Nov. 4, 2026); *United States v. Raffensperger*, No. 26-cv-00485, 2026 WL 3002013 (N.D. Ga. Sept. 30, 2026), *appeal docketed*, No. 26-14057 (11th Cir. Oct. 30, 2026); *United States v. Henderson,* No. 26-cv-00166, 2026 WL 3181405 (D. Utah Oct. 23, 2026); *United States v. Albence*, No. 25-cv-01453, 2026 WL 3407115 (D. Del Nov. 10, 2026).

[7] https://www.federalregister.gov/documents/2025/03/28/2025-05523/preserving-and-protecting-the-integrity-of-american-elections.

Administrator of the Department of Government Efficiency to review each state's voter file and list maintenance records for non-citizens, Sec. 2(b)(iii), and requires the Attorney General to use information maintained by DHS (including DLN records) to prosecute non-citizens who vote, Sec. 2(e).

In response, the DOJ Civil Rights Division launched a "Voter List Maintenance Policy," whereby DOJ "began requesting states' unredacted voter rolls, disclosing the lists to other federal agencies, comparing them against a federal database to identify purportedly ineligible voters, and demanding that states remove voters from their rolls based on the results of those comparisons." *Common Cause v. DOJ*, No. 26-cv-1352, 2026 WL 3033772, at *4-*7 (D.D.C. Oct. 9, 2026) (summarizing administrative record).

DOJ shared voter registration data with DHS, which ran it through the Systematic Alien Verification for Entitlements (SAVE) program. *Id.* at *6. SAVE is a database originally created to assist with verifying the immigration status of applicants for federal, state, or local benefits. GAO, *Immigration Status Verification For Benefits – Actions Needed to Improve*

*Effectiveness and Oversight*, at 1 (Mar. 2017).[8] In 2025, DHS overhauled SAVE to, among other things, "search[] multiple government databases or systems to provide a SAVE response," including the Social Security Administration database. 90 Fed. Reg. 48948 (Oct. 31, 2025).

The "information-sharing memorandum" between DOJ and DHS "acknowledged certain limitations on SAVE's ability to verify citizenship." *Common Cause*, 2026 WL 3033772, at *6. DHS' own documents indicate SAVE cannot produce consistently accurate results because the records upon which it relies do not always contain updated information regarding naturalization status. USCIS, *Voter Registration and Voter List Maintenance Fact Sheet* (Aug. 27, 2025)[9] (SAVE may return inaccurate results for individuals with acquired citizenship); DHS, *Private Impact Assessment for the Systematic Alien Verification for Entitlements "SAVE" Program* (Oct. 31, 2025)[10] (SAVE may produce inaccurate results due to misspellings, transposed numbers, and

---

[8] https://www.gao.gov/assets/gao-17-204.pdf.

[9] https://www.uscis.gov/save/current-user-agencies/guidance/voter-registration-and-voter-list-maintenance-fact-sheet.

[10] https://www.dhs.gov/sites/default/files/2025-10/privacy-pia-dhsuscis006d-save-october2025%20%28002%29.pdf.

incomplete information, and that queries using SSN do not trigger the manual review designed to mitigate these errors).

Public reporting shows DOJ's policy has been unsuccessful. *E.g.*, Jack Friedman & Wren Orey, *Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, MIT Election Data & Science Lab (Oct. 1, 2026)[11]; Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle,* N.Y. Times (Sept. 24, 2026)[12]; Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025).[13] Last month, the D.C. District Court vacated the Voter List Maintenance Policy, holding it exceeded DOJ's statutory authority, was arbitrary and capricious, and violated both the Privacy Act and the Paperwork Reduction Act. *Common Cause*, 2026 WL 3033772, at *22-*36.

---

[11] https://electionlab.mit.edu/articles/evaluating-how-uscis-save-system-performs-practice.

[12] https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html.

[13] https://www.npr.org/2025/12/10/nx-s1-5588384/save-voting-data-us-citizens.

## SUMMARY OF THE ARGUMENT

I. When the Attorney General seeks to enforce a valid demand for records or papers under 52 U.S.C. § 20703, Title III grants jurisdiction only to the federal district court "for the district in which a demand is made" or "in which a record or paper so demanded is located." 52 U.S.C. § 20705. DOJ bears the burden of proof that jurisdiction exists and did not allege facts to show that either criterion was satisfied here. DOJ now argues that 52 U.S.C. § 20705 determines venue, not jurisdiction. But DOJ in its complaint and District Court briefing recognized that § 20705 is jurisdictional—it cannot change position now. And in the statute Congress spoke clearly of the power of the court, not to the rights of the parties, confirming that § 20705 determines jurisdiction.

II. In the District Court, Secretary Schmidt argued that the Pennsylvania constitutional privacy protections operate harmoniously with Title III and prevent disclosure of voters' PII. DOJ did not address—much less dispute—this argument below and so has forfeited any objection. DOJ has also not identified any provision of Title III that preempts the Pennsylvania Constitution.

III. DOJ has failed to state a claim that Secretary Schmidt has violated Title III.

A. Title III does not displace the Federal Rules of Civil Procedure or require courts to conduct a "severely limited" inquiry. The Supreme Court has held for over half a century that federal investigatory demands are subject to the Federal Rules and to judicial review.

B. Congress allows the Attorney General to inspect records only "upon demand in writing" that contains "a statement of *the basis and the purpose* therefor." 52 U.S.C. § 20703 (emphasis added). The plain language requires "the basis" to be factual and distinct from "the purpose," while the history shows that both must relate to voting rights violations. DOJ's August 14, 2025, demand stated only that the purpose was to "ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA," which does not meet this standard. By not appealing the dismissal of its NVRA and HAVA claims, DOJ has waived any argument that evaluating compliance with the NVRA and HAVA provides the basis and purpose for its demand. A basic review of these statutes demonstrates that a static copy of Pennsylvania's SVRL will not accomplish DOJ's alleged attempt to evaluate compliance

with either. Nor do DOJ's new concerns with Pennsylvania's EAVS responses justify the demand.

C. The Attorney General demanded Pennsylvania's SVRL from Secretary Schmidt, but the SVRL is not a "record or paper" that an election official is required by 52 U.S.C. § 20701 to "retain[] or preserve[]." 52 U.S.C. § 20703.

D. Title III states that the demanded records must "be made available for inspection, reproduction, and copying *at the principal office* of such custodian by the Attorney General or his representative." 52 U.S.C. § 20703 (emphasis added). This does not encompass electronic disclosure.

E. Even if Title III required Secretary Schmidt to produce the SVRL electronically, nothing in Title III prohibits the redaction of sensitive voter information, such as voters' SSN4s and DLNs.

IV. DOJ is seeking an unprecedented new collection of the SSN4s and DLNs of Pennsylvania's 8.9 million registered voters. On the face of its complaint, DOJ has not shown that it has complied with the Privacy Act, the E-Government Act, or the Driver's Privacy Protection Act.

## STANDARD OF REVIEW

This Court's review of a district court order granting a motion to dismiss is de novo and plenary. *Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 180 (3d Cir. 2008). The Court must accept "as true the facts alleged in the complaint and the reasonable inferences that can be drawn from those facts." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (cleaned up). The Court may also "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994) (citing 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d,* § 1357)).

## ARGUMENT[14]

### I. The District Court lacked subject matter jurisdiction over DOJ's Title III claim.

When the Attorney General seeks to enforce a valid demand for records or papers under 52 U.S.C. § 20703, Title III grants jurisdiction only to the federal district court "for the district in which a demand is made" or "in which a record or paper so demanded is located." 52 U.S.C. § 20705. DOJ bears the burden of proof that jurisdiction exists, *see Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015), and does not allege facts to show that either criterion was satisfied here. Nor could it, as Secretary Schmidt sits in Harrisburg, which is in the Middle District. The District Court rightly found that it lacked subject matter jurisdiction over DOJ's Title III claim. JA4-5.

On appeal, DOJ argues (at 16-19) that 52 U.S.C. § 20705 is a special venue provision. But in its complaint, DOJ states that *jurisdiction* is proper under 52 U.S.C. § 20705, while *venue* is proper under the general venue statute, 28 U.S.C. § 1391(b). JA43 (Compl. ¶¶ 4, 5). When

[14] Per this Court's Order, Doc. 4 (July 7, 2026), Secretary Schmidt adopts the arguments made by the three Intervenor-Defendants in their respective answering briefs.

Secretary Schmidt moved to dismiss in part because the Western District lacked subject matter jurisdiction, JA153, DOJ argued in opposition that 52 U.S.C. § 20705 conferred jurisdiction because Pennsylvania's SVRL was available electronically in every district, JA182-83. Although DOJ subsequently moved to transfer venue, it did so just seventeen days after arguing that § 20705 was jurisdictional and without explanation or acknowledgement of its change in position on a fundamental question of the District Court's authority to adjudicate the case. *See* JA275 & n.1.

This Court should not allow DOJ "to raise an argument" that is "the opposite of the one [it] made in the District Court." *Beltz v. Erie Indem. Co.*, 733 F. App'x 595, 598-99 (3d Cir. 2018) (citing *Spireas v. Comm'r of Internal Revenue*, 886 F.3d 315, 321 n.9 (3d Cir. 2018)) (holding argument forfeited).

DOJ is also wrong. In 52 U.S.C. § 20705, Congress clearly spoke to the power of a district court to enforce a Title III demand. This confers jurisdiction, not venue.[15]

---

[15] Because 52 U.S.C. § 20705 does not concern venue, the general venue statute, 28 U.S.C. § 1391, controls. Secretary Schmidt, in his official capacity, has his principal and only office in Harrisburg, as does the Department of State Bureau of Elections. Although venue is proper (continued…)

The distinction between subject matter jurisdiction and venue is not immaterial. The former defines a court's "power to adjudicate" and cannot be waived by the parties; the latter concerns "the place where judicial authority may be exercised" for the "convenience" of the parties and may be waived by the defendant. *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939); *accord Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006); *see also* 14D Wright & Miller, *Federal Practice and Procedure: Jurisdiction* § 3801 (4th ed. Sept. 2025 update) (discussing the differences between venue and jurisdiction).

A jurisdictional statute tends to "speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (cleaned up). A venue provision, by contrast, speaks "to the authority of the parties to seek relief in the courts." *Brentwood at Hobart v. N.L.R.B.*, 675 F.3d 999, 1003 (6th Cir. 2012); *see also Henderson v. United States*, 517 U.S. 654, 666 (1996) (a "generous-to-plaintiffs provision will be recognized instantly as one describing venue choices, not subject-matter jurisdiction").

---

in the Middle District, Secretary Schmidt did not object to venue before the District Court. If this Court holds § 20705 to be a venue provision, Secretary Schmidt would not object to venue in the Western District.

If Congress "clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 550 (2019) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (cleaned up)).

In Title III, Congress spoke clearly to the power of the court, not to the rights of the parties: "The *United States district court* for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, *shall have jurisdiction* by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). This language is jurisdictional.

Other courts examining § 20705 agree. *Henderson*, 2026 WL 3181405, at *3; *United States v. Raffensperger*, No. 25-cv-00548, 2026 WL 184233, at *2 (M.D. Ga. Jan. 23, 2026). Indeed, after the Middle District of Georgia dismissed DOJ's parallel lawsuit for lack of subject matter jurisdiction, the United States chose to refile in the proper district. *Raffensperger*, 2026 WL 3002013, at *3.

Provisions with similar language have also been recognized as conferring jurisdiction, not venue. For example, 26 U.S.C. § 7402(b)

states that "the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process" to enforce an IRS summons; 26 U.S.C. § 7604(a) uses nearly identical language. The U.S. Supreme Court, the federal government, and this Court recognize this language to be jurisdictional. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 n.4 (1992) ("Sections 7402(b) and 7604(a) confer jurisdiction on the federal district courts to enforce a summons issued by the IRS."); *id.* at 14 (summarizing government argument that under these provisions, the district court's jurisdiction is narrow); *United States v. Servin*, 721 F. App'x 156, 158 n.4 (3d Cir. 2018) ("The District Court had jurisdiction pursuant … 26 U.S.C. §§ 7402(b) and 7604(a).").

The cases cited by DOJ do not state a contrary rule. DOJ selectively quotes (at 17) from *Pure Oil Co. v. Suarez*, 384 U.S. 202 (1966), to claim it stated a universal rule the word "jurisdiction" in conjunction with location. But that case concerned a single, specific sentence from the Jones Act, and the Supreme Court did no more than state its prior holding concerning that sentence: "Preliminarily it should be noted that although *this provision* is framed in jurisdictional terms, the Court has

held that it refers only to venue." *Id.* at 203 (emphasis added) (citing *Panama R. Co. v. Johnson*, 264 U.S. 375, 383 (1924)). In *Panama Railway*, the Supreme Court examined that sentence in the contemporaneous version of the Jones Act, in which the sentence fell at the end of a longer provision speaking to the rights of seamen to bring personal injury claims against their employers. *Panama R. Co.*, 264 U.S. at 383. In this right-of-the-parties context, the Supreme Court concluded that the Jones Act sentence prescribed venue. *Id.* at 384-85.

DOJ's other citations are similarly distinguishable. In *Transcapital Leasing Assocs., 1990-II, L.P. v. United States*, 398 F.3d 1317 (Fed. Cir. 2005), the court determined that a provision identifying where a "tax matter partner may file a petition for readjustment" spoke to venue, *id.* at 1319, in part because a separate provision entirely identified jurisdiction. *Id.* at 1320. Same with *In re Duncan*, 713 F.2d 538 (9th Cir. 1983), in which the contemporaneous provision included two sentences, one jurisdictional that "vests specified courts with the power to entertain petitions for naturalization" and one for venue that "defines the particular geographical area within which the petition must be brought." *Id.* at 542.

Title III is different. Only 52 U.S.C. § 20705 speaks to jurisdiction and does so in a single sentence. Unlike *Panama Railway* or *Transcapital Leasing*, § 20705 does not refer to the Attorney General's right to bring suit—that comes from 52 U.S.C. § 20703. The logical conclusion, therefore, is that § 20705 speaks to the power of the courts. And here, it does not grant jurisdiction in the Western District over DOJ's claim.

## II. The Pennsylvania Constitution prevents disclosure of voters' PII, as DOJ has conceded.

In the District Court, Secretary Schmidt moved to dismiss in part because Pennsylvania constitutional privacy protections operate harmoniously with the NVRA, HAVA, and Title III and prevent disclosure of voters' PII. DOJ did not address—much less dispute—this argument in District Court, thereby conceding that these constitutional protections apply. *Compare* JA155-56 (Secretary Schmidt's brief in support of motion to dismiss), *with* JA160-92 (DOJ's brief in opposition).

DOJ now argues (at 58-60) that federal law preempts Pennsylvania's constitutional protections. But this argument was not

presented to the District Court and so is forfeited. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). It is also wrong.[16]

Article I, Section 1 of the Pennsylvania Constitution protects voters' "inherent and indefeasible" right to informational privacy, which is the "right of the individual to control access to, or the dissemination of, personal information about himself or herself." Pa. Const. art. I, § 1; *Pa. State Educ. Ass'n (PSEA) v. Com. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 150 (Pa. 2016). This protection recognizes that the disclosure of some types of information, such as SSN4 and DLN, "by their very nature[] would operate to the prejudice or impairment of a person's privacy, reputation, or personal security, and thus intrinsically possess a palpable weight." *Id.* at 155 (quoting *Tribune-Review Pub. Co. v. Bodack*, 961 A.2d 110, 115-16 (Pa. 2008)). Only a context-specific "compelling state interest will override one's privacy rights" and justify disclosure. *Allegheny Reprod. Health Ctr. v. Pa. DHS*, 309 A.3d 808, 903-04 (Pa. 2024); *accord Commonwealth v. Nixon*, 761 A.2d 1151, 1156 (Pa. 2000).

[16] *See also Raffensperger*, 2026 WL 3002013, at *6-*8 (holding that federal law does not preempt Georgia's voter privacy law).

While HAVA requires Pennsylvania voters to provide their SSN4 or DLN when registering to vote, *see* 52 U.S.C. § 21083(a)(5)(A), exercise of the franchise does not require voters to forfeit their constitutionally protected privacy interest in that information, *see, e.g.*, *PSEA*, 148 A.3d at 158 (noting that public school employees "should not be required to forfeit their privacy merely as a precondition to, or by virtue of, their decision to be employed as public school employees").

The Elections Clause gives States the power to regulate the times, places, and manner of federal congressional elections (including registration), subject to congressional power to "make or alter such [r]egulations." U.S. Const. art. I, § 4, cl. 1; *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013). State law is preempted only if it is "inconsistent" with a federal election law. *ITCA*, 570 U.S. at 15.

No inconsistency exists between Pennsylvania's constitutional privacy protections and Title III. As explained in Part III, *infra*, DOJ has not identified a provision of Title III that requires disclosure of voters' SSN4 and DLN or a "compelling state interest" that overrides voters' constitutional privacy interests. DOJ argues (at 60) that 52 U.S.C. § 20704 represents a conflicting privacy protection that preempts the

Pennsylvania Constitution. But these operate at different points in time: the Pennsylvania Constitution restricts what may be produced *to* the Attorney General, while § 20704 restricts what DOJ employees and representatives may do with "any record or paper produced pursuant to this chapter." Thus, no inconsistency exists.

## III. The District Court correctly dismissed DOJ's Title III claim.

The District Court's lack of jurisdiction over DOJ's Title III claim and the harmonious applicability of Pennsylvania's constitutional protections each permit the Court to affirm without evaluating the merits of the Attorney General's demand. But if the Court does so, the District Court correctly found that DOJ failed to state a claim.

### A. Title III does not displace the Federal Rules of Civil Procedure or eliminate meaningful judicial review.

DOJ claims throughout its brief that Secretary Schmidt cannot challenge a Title III demand because Title III displaces the Federal Rules of Civil Procedure and requires courts to conduct a "severely limited" inquiry that does not "second-guess or probe the sufficiency or sincerity of the Attorney General's statement." DOJ Br. at 23-27, 28-29, 31, 38, 41 (citing *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)). Instead, DOJ would have this Court compel production if the Attorney General merely

states that he has made a written demand for federal election records to an election officer. DOJ Br. at 27, 28-29, 31-32, 38. But the Supreme Court has held for over half a century that federal investigatory demands are subject to the Federal Rules and to judicial review.[17]

Title III states that a federal district court "shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. In 1964, the Supreme Court addressed the standard for enforcing an IRS summons under 26 U.S.C. §§ 7402(b) and 7604(a)—which, like 52 U.S.C. § 20705, provide district courts with jurisdiction to compel production "by appropriate process." *United States v. Powell*, 379 U.S. 48, 52 (1964). The Supreme Court held that in the absence of a

---

[17] Courts reviewing DOJ's parallel lawsuits agree. *Weber*, 816 F.Supp.3d at 1182; *Oregon*, 828 F.Supp.3d at 1102-03; *Fontes*, 832 F.Supp.3d at 947; *Amore*, 831 F.Supp.3d at 154-55; *DeMarinis*, 2026 WL 1780586, at *3; *Scanlan*, 838 F. Supp. 3d at 153 n.2; *Bd. of Elec. of N.Y.*, 2026 WL 1999921 at *5-*7; *Warner*, 840 F. Supp. 3d at 449-50; *Koski*, 2026 WL 2032532, at *2 n.2; *Oliver*, 2026 WL 2031479, at *6-*7; *Adams*, 837 F. Supp. 3d at 885-86; *Caldwell*, 2026 WL 2186515, at *6; *Matthews*, 2026 WL 2212877, at *2-*3; *Griswold*, 2026 WL 2235374, at *3; *Evans*, 2026 WL 2267774, at *4; *Aguilar*, 2026 WL 2364502, at *2-*3; *Simon*, 2026 WL 2389778, at *7-*8; *Hanzas*, 2026 WL 2754349, at *2-*3; *Hobbs*, 2026 WL 2833713, at *3 n.6; *Raffensperger*, 2026 WL 3002013, at *3-*4; *Henderson*, 2026 WL 3181405, at *5-*6; *Albence*, 2026 WL 3407115, at *5.

"provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18.

Nothing in text of Title III states, explicitly or implicitly, that the court must disregard the Federal Rules of Civil Procedure or conduct a special proceeding. The Federal Rules confirm that they govern "all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. Rule 81 does not directly implicate a Title III demand, and the closest possible analogue is still subject to the Federal Rules. *See* Fed. R. Civ. P. 81(a)(5) ("proceedings to compel … the production of documents through a subpoena issued by a United States officer or agency under a federal statute").

The Supreme Court has also made clear that a court is permitted to "inquire into the underlying reasons" for a federal investigatory demand. *Powell*, 379 U.S. at 58. Such demands "must be scrutinized by a court to determine whether it seeks information relevant to a legitimate investigative purpose and is not meant 'to harass [the recipient] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.'" *United States v. Bisceglia*, 420 U.S. 141, 151 (1975) (quoting *Powell*, 379 U.S. at 58);

*accord United States v. Morton Salt Co.*, 338 U.S. 632, 644-54 (1950) (noting that FTC orders are not "exempt from judicial examination").

This Court requires the federal government to make a "four-step prima facie showing" before a summons may be enforced: (1) "that the investigation will be conducted pursuant to a legitimate purpose," (2) "that the inquiry may be relevant to the purpose," (3) "that the information sought is not already within the [agency's] possession," and (4) "that the administrative steps required by the [authorizing statute] have been followed." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1262 (3d Cir. 1990) (quoting *Powell,* 379 U.S. at 57-58). The recipient of the summons can then challenge the summons by disproving any of the four elements or "otherwise demonstrat[ing] that enforcement of the summons will result in an abuse of the court's process." *Id.* Judicial review also includes balancing implicated privacy interests. *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980).

This well-established, common-sense approach to judicial review of investigatory demands belies DOJ's claim (at 27) that Title III lacks "any standard against which to measure" the Attorney General's demand. Nor does anything in the statute commit the basis and the purpose of a

demand to the Attorney General's sole, subjective discretion. *Contra* DOJ Br. at 27 (citing *Webster v. Doe*, 486 U.S. 592, 600 (1988)).

DOJ does not acknowledge this standard, much less attempt to meet it. Instead, DOJ argues that the Supreme Court endorsed a "summary proceeding" standard in *Donaldson v. United States*, 400 U.S. 517 (1971), in which the Supreme Court again examined enforcement of an IRS summons under 26 U.S.C. §§ 7402(b) and 7604(a). *Id.* at 520. There the Court held that because the Federal Rules give courts discretion to "limit application of the rules in a summons proceeding," *id.* at 528-29 (citing what is now Rule 81(a)(5)), a district court could deny intervention under Rule 24 to an "employee of a company to which the IRS had issued a summons" to "prevent his employer's compliance with the Service's request," *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 443-44 (2023) (recognizing *Donaldson* has been overruled by statute).

DOJ's reliance on *Donaldson* is ironic, since it did not oppose Rule 24 intervention by the Intervenor-Defendants in this supposed summary proceeding. But more fatal is DOJ's conflation (at 27) of a summary proceeding with the absence of "room for judicial inquiry." Even in a summary proceeding, *Donaldson* reaffirmed that the Federal Rules do

apply and require a judicial process that protects "the rights of the party summoned" and makes available an "adversary hearing." *Donaldson*, 400 U.S. at 528.[18] The District Court did so by reviewing DOJ's demand and adjudicating the Secretary's motion to dismiss. This Court is equally empowered to review that determination on appeal.

### B. DOJ did not provide a sufficient "basis" and "purpose" for its demand.

Congress allows the Attorney General to inspect records only "upon demand in writing" that contains "a statement of *the basis and the purpose* therefor." 52 U.S.C. § 20703 (emphasis added). In its August 14, 2025, letter to Secretary Schmidt, DOJ stated that "the *purpose* of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA," but did not provide a basis. JA222 (emphasis added). In the District Court, this single line

[18] DOJ's reliance on *Donaldson*, though misplaced, also means it has forfeited any argument that "an IRS summons is meaningfully different from a Title III demand." *Cf. Benson III*, 187 F.4th at 480 (Thapar, J., dissenting). Judge Thapar's dissent from rehearing en banc is also unpersuasive: State officials acting in their official capacities do not forfeit their rights; no precedent suggests that judicial review is unwarranted when an investigatory demand seeks only a single category of records; and the IRS and DOJ both must go to court to enforce their demands.

was DOJ's sole argument for how it had satisfied Title III's basis and purpose requirements. JA180-81. The District Court correctly found this did not constitute a legally sufficient purpose *and* basis under Title III.[19]

Blackletter law requires giving effect to every word of a statute and avoiding surplusage. *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004) (collecting caselaw). This means that DOJ must provide both *the basis* and *the purpose*, and they must be distinct. DOJ now argues (at 28-29) that "possible noncompliance" with the NVRA and HAVA is a sufficient "legal basis." But this is also DOJ's stated purpose, and accepting it would render one half of the phrase superfluous. The better reading is that "the purpose" "denotes the investigative objective of the demand" while "the basis" "is the evidentiary or factual predicate giving rise to the demand in the first place." *Scanlan*, 838 F. Supp. 3d at 159-62

[19] So have other courts reviewing near-identical demands. *Benson II*, 179 F.4th at 482-83; *Weber*, 816 F.Supp.3d at 1182-84; *Oregon*, 828 F.Supp.3d at 1103-05; *Galvin*, 830 F. Supp. 3d at 127-31; *Amore*, 831 F.Supp.3d at 155-58; *Bellows*, 834 F. Supp. 3d at 123-27; *Scanlan*, 838 F. Supp. 3d at 159-62; *Warner*, 840 F. Supp. 3d at 451-56; *Oliver*, 2026 WL 2031479 at *9-*10; *Adams*, 837 F. Supp. 3d at 887-88; *Matthews*, 2026 WL 2212877, *4-*6; *Aguilar*, 2026 WL 2364502, at *5-*6; *Hanzas*, 2026 WL 2754349, at *5-*6.

(reviewing the text, dictionaries, and historical practice); *accord Warner*, 840 F. Supp. 3d at 451-54 (same).[20]

Moreover, Congress enacted Title III to "provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956 at 7 (1959); *see also State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) (stating that Congress designed Title III "to secure a more effective protection of the right to vote"); Presidential Statement on Signing the Civil Rights Act of 1960 (May 6, 1960) ("retention of voting records … will be of invaluable aid in the successful enforcement of existing voting rights statutes").[21] Consistent with this history, the basis and the purpose must relate to "investigating violations of individuals'

[20] *Accord Oregon*, 828 F.Supp.3d at 1103-05; *Galvin*, 830 F. Supp. 3d at 127-31; *Amore*, 831 F.Supp.3d at 155-58; *Oliver*, 2026 WL 2031479 at *9-*10; *Matthews*, 2026 WL 2212877, *4-*6; *Aguilar*, 2026 WL 2364502, at *5-*6.

[21] https://www.presidency.ucsb.edu/documents/statement-the-president-upon-signing-the-civil-rights-act-1960.

voting rights." *Warner*, 840 F. Supp. 3d at 454-55 (examining history and contemporaneous caselaw).[22]

Finally, although the motion to dismiss stage required the District Court to review only the allegations in the complaint and the August 14 letter that contained DOJ's Title III demand, the court was not obligated to accept DOJ's stated purpose as reflecting its true intentions. *Contra* DOJ Br. at 37-39. Judges "are not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (cleaned up)). Secretary Schmidt has offered context about DOJ's unprecedented efforts to obtain SVRLs from most states—but, consistent with the motion to dismiss standard, also asked the District Court to reject DOJ's allegations as legally insufficient on their face. *See* Reply Br. at 2, Doc. 122 (W.D.Pa. Jan. 30, 2026).

On appeal, DOJ attempts to identify new bases and purposes never presented to the District Court. But these still only vaguely reference hypothetical noncompliance with list maintenance obligations Congress authorized States to conduct, for which reviewing a static copy of voters'

---

[22] *Accord Weber*, 816 F.Supp.3d at 1182-83; *Oregon*, 828 F.Supp.3d at 1104-05; *Matthews*, 2026 WL 2212877, *5-*6; *Hanzas*, 2026 WL 2754349, at *6.

PII is unnecessary. As a result, DOJ does not have a legitimate or relevant need for voters' PII. *See Rockwell Int'l*, 897 F.2d at 1262.

### 1. Evaluating compliance with the NVRA is not a valid basis or purpose.

DOJ claims (at 29, 31-32, 34-35, 40-41, 42) that "the basis" and "the purpose" for collecting voters' PII are to determine whether "Pennsylvania is in compliance with the NVRA." But DOJ has waived this argument by not appealing dismissal of its NVRA claim, which the District Court dismissed with prejudice in part based on arguments by the Secretary that DOJ does not need voters' PII to accomplish its stated purposes. DOJ Br. at 3, 13; JA4, 143-47; *see United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) (claims omitted from the opening brief are waived). Nor has DOJ ever put forward any specific allegation that Pennsylvania is violating the NVRA.

DOJ claims (at 42) that it needs voters' PII to assess whether Pennsylvania's SVRL contains "voters who have died or changed residence." This fundamentally misunderstands what the statute says. Section 8(a) of the NVRA requires each state to "conduct a general program that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or

change in residence. 52 U.S.C. § 20507(a)(4) (emphasis added); *see Am. C.R. Union v. Phila. City Comm'ners*, 872 F.3d 175, 182 (3d Cir. 2017); *Bellitto v. Snipes*, 935 F.3d 1192, 1195 (11th Cir. 2019). The statute focuses on process, not results. "Section 8(a)(4) does not require a perfect removal effort[.]" *Judicial Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 407 (M.D. Pa. 2021). This is because Congress was striking a balance between making registration more accessible and maintaining accurate voter rolls. A "maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters." *Bellitto*, 935 F.3d at 1198.

To constitute a reasonable effort, the removal program must make "a rational and sensible attempt to remove dead [or non-resident] registrants." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025). A "state need not, however, go to 'extravagant or excessive' lengths in creating and maintaining such a program." *Id.* Nor is a state "required to exhaust all available methods for identifying deceased [or non-resident] voters; it need only use reasonably reliable information to identify and remove such voters," *Bellitto*, 935 F.3d at 1205.

For change in residence, the NVRA provides a "safe harbor" by allowing a state to use "change-of-address information supplied by the Postal Service." 52 U.S.C. § 20507(c)(1); *see also, e.g.*, *Bellitto*, 935 F.3d at 1205; *Judicial Watch, Inc. v. Illinois State Bd. of Elections*, 2025 WL 2712209 at *11 (N.D. Ill. Sept. 23, 2025). For deaths, courts have recognized that states made a "reasonable effort" where removal programs were based on state and federal death records. *See, e.g.*, *Pub. Int. Legal Found.*, 136 F.4th at 628; *Bellitto*, 935 F.3d at 1205.

Thus, to determine whether a state is violating Section 8(a)(4), the proper inquiry is on the reasonableness of the process itself, rather than the result. A snapshot of Pennsylvania's voter registration file—with or without voters' DLNs and SSN4s—will not tell DOJ what processes election officials follow, what data sources they use, or how regularly they remove voters who have become ineligible due to death or change in residence. The mere existence at a given time of specific individuals on the voter rolls who have died or changed residence does not determine whether a state's process is reasonable. *See Pub. Int. Legal Found.*, 136 F.4th at 628 (assuming that 27,000 deceased voters were on Michigan's voter rolls and finding that, at 0.3% of the registration rolls, "that

vanishingly small percentage is in-and-of-itself indicative that Michigan has taken rational, sensible steps to maintain accurate voter rolls").

People die and move every day, and removing them takes time. There will always be some number of dead or non-resident registrants on any state's voting rolls, no matter how diligent the state is. *E.g.*, 25 Pa.C.S. § 1505(a) (requiring the Department of Health to notify county election officials "within 60 days of receiving notice of the death" of an adult); 52 U.S.C. § 20507(d) (requiring a multi-year process before a state can remove a voter due to change in residence). A static, point-in-time snapshot of the voter file (with or without SSN4s and DLNs) is just that—it says nothing about the adequacy of a state's process.

Therefore, DOJ's demand for voter PII is neither legitimate nor relevant to enforcing the NVRA. *See Rockwell Int'l*, 897 F.2d at 1262.

#### 2. Evaluating compliance with HAVA is not a valid basis or purpose.

DOJ also claims (at 34, 41-42) that "the basis" and "the purpose" are a possible violation of HAVA that necessitates production of voters' PII. But DOJ has also waived this argument by not appealing dismissal of its HAVA claim, which the District Court dismissed with prejudice in part based on arguments by the Secretary that DOJ does not need voters'

PII to accomplish its stated purposes. DOJ Br. at 3, 13; JA4, 149-52; *see Pelullo*, 399 F.3d 222. Nor has DOJ ever put forward any specific allegations that Pennsylvania is violating HAVA.

DOJ suggests (at 42) that it needs Pennsylvania voters' SSN4s and DLNs to ensure that Pennsylvania is collecting these numbers. HAVA's voter registration requirements instruct states not to accept or process a voter registration application unless the applicant provides a DLN or SSN4. 52 U.S.C. § 21083(a)(5)(A)(i). If the applicant does not have one of those two numbers, the state must assign them an identification number for voter registration purposes. *Id.* § 21083(a)(5)(A)(ii). Crucially, however, Congress authorized Pennsylvania to "determine whether the information provided by an individual," i.e., their SSN4, DLN, or a lack thereof, "is sufficient to meet [these requirements], *in accordance with State law*." *Id.* § 21083(a)(5)(A)(iii) (emphasis added).

As a practical matter, DOJ knows that Pennsylvania requires DLNs and SSN4s; otherwise, it would not be suing for them. The Commonwealth's voter registration application confirms that Pennsylvania collects that information. *See* Pennsylvania Voter

Registration Application & Mail-In Ballot Request.[23] But obtaining voters' SSN4s and DLNs would tell DOJ nothing about whether Pennsylvania requires those numbers from all applicants who possess them. To check whether there are any registrants who do not have an SSN4 or DLN listed in the voter file, but who do in fact have such a number, DOJ would also need to have access to the Commonwealth's driver's license database and the Social Security database, as well as a way to verify that any given registrant without an SSN4 or DLN listed in the voter file is the same person as an individual in those databases.

Obtaining voters' SSN4s and DLNs would also tell DOJ nothing about whether or how Pennsylvania law determines whether the information provided is sufficient to meet the requirements of HAVA, "in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii). This clause means that *Pennsylvania* may choose whether to query the SSN4 or DLN provided by a registrant against the relevant database, and if they do, what to do if the query returns a non-match. *Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1174 n.21 (11th Cir. 2008) ("HAVA

[23] https://www.pa.gov/content/dam/copapwp-pagov/en/vote/resources/documents-and-forms/Voter_Registration_Application_English.pdf.

also does not require that states authenticate these numbers by matching them against existing databases. It is explicit that states are to make determinations of validity in accordance with state law."); *accord Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264, 1268-69 (W.D. Wa. 2006).

Pennsylvania law does not require a match at the time of registration. 25 Pa.C.S. § 1328; *see also* Pa. Dep't of State, *Directive Concerning HAVA — Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications* (2018) (advising that county election officials may not reject voter registration applications based solely on a mismatch); *Rossman v. Pa. Dep't of State*, 352 A.3d 561, at *6 (Pa. Comm. Ct. Dec. 8, 2025) ("[S]tate law does not authorize an out-of-hand rejection based merely upon a mismatch in the driver's license or SSN databases, without investigation."), *appeal docketed*, No. 1 WAP 2026 (Pa. Jan. 6, 2026); *McLinko v. Pennsylvania*, 349 A.3d 241, at *5-6 (Pa. Comm. Ct. Oct. 20, 2025) (same); *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 604 (Pa. Comm. Ct. 2025) (same).[24]

---

[24] If an individual registers by mail or online and they do not provide a DLN or SSN4, or the number they provide cannot be verified (continued…)

In short, possessing voters' SSN4s and DLNs will not tell DOJ whether Pennsylvania requires those numbers from registrants who have them and otherwise assigns numbers to those who do not. And because neither HAVA nor Pennsylvania law require a match at the time of registration, there is no other potential violation of HAVA's voter registration requirements, let alone one that would require voters' SSN4s and DLNs to establish.

DOJ also argues (at 35, 42) that voters' SSN4s and DLNs are necessary to evaluate whether Pennsylvania is conducting list maintenance. HAVA does require that list maintenance be conducted "on a regular basis" to remove duplicate names. 52 U.S.C. § 21083(a)(2). In his August 14, 2025, letter, Secretary Schmidt referred DOJ to the Department's annual report, which explains how Pennsylvania removes duplicate registrations. *See* DOS 2024 VR Report, *supra* note 1, at 17-18.

---

at the time of registration, HAVA provides with limited exception that the individual must not be permitted to vote for the first time unless they provide proof of identity with their voter registration application, with their mail ballot, or at the polling place. 52 U.S.C. § 21083(b). Pennsylvania law also requires identification at the polling place when voting for the first time, and with each application for an absentee or mail-in ballot. *See* 25 P.S. § 3050(a), as modified by *Applewhite v. Com.*, 2014 WL 184988, at *27 (Pa. Commw. Ct. Jan. 17, 2014); 25 P.S. §§ 3146.2b(c), 3150.12b(a).

But a static, point-in-time voter roll would tell DOJ nothing about how regularly removals are conducted. Depending on when DOJ were to receive the voter file, the same HAVA-compliant program would have different numbers of potential duplicates. For example, because the removal process takes time, one would expect a higher number of duplicates in the weeks immediately before a voter registration deadline, when voter registration activity typically spikes. *See* 25 Pa.C.S. § 1328(d) (a registrant's new county must send a cancellation notice to her old county, but the old county must investigate and verify the address change before cancelling the record). Likewise, one would expect the number of duplicate registrations to be higher immediately before the Department receives a duplicate report from the Electronic Registration Information Center[25] and provides information to the relevant counties. *See generally* DOS 2024 VR Report, *supra* note 1, at 17-18, 72-74, 87-89.

Even if the number of duplicate registrations at a fixed point in time were relevant to determining HAVA compliance, it is not necessary for

---

[25] ERIC is a nonprofit, nonpartisan membership organization funded and governed by its members states to help improve the accuracy of America's voter rolls. *See* ERIC, *What is ERIC?* https://ericstates.org/about/ (last visited Nov. 20, 2026).

DOJ to possess registrants' SSN4s and DLNs. The Secretary has offered DOJ a voter file with a wealth of registrant information, including voter ID number, full name, date of birth, residential address, sex, political party, date registered, voter history, and date the registrant's record was last changed. *See supra* at 10. Were DOJ genuinely concerned about removing duplicate registrations, it could use the information in the voter file to identify likely duplicates and bring them to the attention of the Commonwealth to confirm. It has not done so.

Therefore, DOJ's demand for voter PII is neither legitimate nor relevant to enforcing HAVA. *See Rockwell Int'l*, 897 F.2d at 1262.

#### 3. Evaluating Pennsylvania's EAVS responses is not a valid basis.

DOJ newly argues that (at 22, 29-30, 35) "potential anomalies in Pennsylvania's EAVS responses," identified only in the August 4, 2025, letter, constitute "the basis" of the demand. But DOJ never raised this before the District Court. JA51 (Compl. ¶ 38); *cf.* JA160-92. The timeline also belies this post hoc justification. DOJ sent its Title III demand on August 14, 2025—before Secretary Schmidt had a chance to respond to the August 4 letter. In his August 18, 2025, response, Secretary Schmidt explained that most of DOJ's questions about EAVS—including the two

"anomalies" cited by DOJ here—misunderstood the data or misrepresented the Department's response. JA215-18. DOJ cannot have demanded voters' PII on August 14 to "evaluate the accuracy of Pennsylvania's responses" when DOJ had not yet received Secretary Schmidt's explanations. And as already explained, DOJ does not need this specific data to evaluate whether Pennsylvania counties are sending notices required by the NVRA or removing duplicates as required by HAVA. *See Rockwell Int'l*, 897 F.2d at 1262.

### C. Pennsylvania's statewide voter registration list is not a "record."

The District Court held that unredacted voter files are not "records" for purposes of Title III, relying on the opinion of the only Circuit Court to review DOJ's recent effort to obtain SVRLs under Title III. JA3 (citing *Benson II*, 179 F.4th at 478-82).[26] Although Secretary Schmidt and the

---

[26] District courts have agreed. *Fontes*, 832 F.Supp.3d at 949-54; *Bellows*, 834 F. Supp. 3d at 122-23; *Wisc. Elections Comm'n*, 833 F. Supp. 3d at 953-55; *DeMarinis*, 2026 WL 1780586, at *4-*5; *Scanlan*, 838 F. Supp. 3d at 155-59; *Bd. of Elec. of N.Y.*, 2026 WL 1999921, at *8-*11; *Koski*, 2026 WL 2032532, at *4-*6; *Thomas*, 2026 WL 2070437, at *4-*7; *Adams*, 837 F. Supp. 3d at 886-87; *Caldwell*, 2026 WL 2186515, at *7-*8; *Matthews*, 2026 WL 2212877, at *3-*4; *Griswold*, 2026 WL 2235374, at *4-*5; *Evans*, 2026 WL 2267774, at *6-*10; *Simon*, 2026 WL 2389778, at *9-*11; *Aguilar*, 2026 WL 2364502, at *4-*5; *Hanzas*, 2026 WL 2754349, (continued…)

Intervenor-Defendants did not press this specific argument, they did challenge DOJ's authority to obtain voters' PII under Title III. And ultimately, whether the SVRL is a "record" is a pure question of law. Judicial efficiency permits this Court to resolve it now. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147-48 (3d Cir. 2017); *In re Aquilino*, 135 F.4th 119, 130 n.7 (3d Cir. 2025).

The Attorney General can only demand a "record or paper" that an election official is required by 52 U.S.C. § 20701 to "retain[] or preserve[]." 52 U.S.C. § 20703. Section 20701, in turn, requires an election official to "retain and preserve, for a period of twenty-two months" from any federal election, "all records and papers which *come into his possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in *such* election." 52 U.S.C. § 20701 (emphases added).

The Attorney General sent his demand in writing to Secretary Schmidt on August 14, 2025. JA221-23. Title III, therefore, only obligates Secretary Schmidt to produce records or papers that meet three requirements: (1) "came into his possession" as head of the Department

---

at *4-*5; *Hobbs*, 2026 WL 2833713, *4-*6; *Henderson*, 2026 WL 3181405, at *7-*11; *Albence*, 2026 WL 3407115, at *6-*9.

of State, (2) "relat[e] to any application, registration, payment of poll tax, or other act requisite to voting," and (3) relate to voting in the 2024 primary or general elections. 52 U.S.C. § 20701. The Attorney General's demand for "Pennsylvania's complete and current VRL" JA222, does not meet these elements.

First, Secretary Schmidt "did not acquire, obtain, or receive" the SVRL from a third party; the Department he leads created it. *See Benson II*, 179 F.4th at 478-82; 25 Pa.C.S. § 1222(a), (c)(1).

Second, the SVRL is not a "record[] or paper[] … relating to any application, registration, payment of poll tax, or other act requisite to voting," because those are records generally obtained *from* "voters or prospective voters." *Benson II*, 179 F.4th at 479. DOJ argues (at 43-44) that the word "relating to" must be read expansively. But this Court recently interpreted nearly identical language ("any record or paper relating to any application, registration, or other act requisite to voting," 52 U.S.C. § 10101(a)(2)(B)) and concluded it means "paperwork used in the voter *qualification* process." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 133 (3d Cir. 2024) (emphasis

added). The SVRL is not paperwork used in voter qualification; it is Pennsylvania's list of *registered* voters. 25 Pa.C.S. § 1222(c)(1).

Finally, because voter registration lists are constantly evolving, Pennsylvania's "current VRL" as of August 14, 2025, would not be the one used during either 2024 federal election.

Reading Title III to extend to Pennsylvania's SVRL would also conflict with 52 U.S.C. § 20702, which imposes criminal penalties on anyone who "willfully steals, destroys, conceals, mutilates, or alters any record or paper" covered by 52 U.S.C. § 20701. *Benson II*, 179 F.4th at 479-80. The NVRA, HAVA, and state law require the SVRL to be regularly altered. 52 U.S.C. § 20507(a)(4); 52 U.S.C. § 21083(a)(2); 25 Pa.C.S. §§ 1328, 1505, 1901. DOJ claims (at 44-45) that the word "alters" can only mean an action that "impair[s] the integrity or availability" of records—but neglects to mention that the cited Supreme Court case interpreted a statute with that specific language ("alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, *with the intent to impair the object's integrity or availability for use in an official proceeding*," 18 U.S.C. § 1512(c)(1) (emphasis added)). Title III includes no such qualification.

Because the SVRL is not a "record" Secretary Schmidt is required to retain and preserve under 52 U.S.C. § 20701, the Attorney General cannot compel its production under 52 U.S.C. § 20703.

### D. Title III does not require electronic disclosure.

Congress requires that records or papers subject to a Title III demand "be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." 52 U.S.C. § 20703. This does not require electronic production.[27] Contrary to DOJ's brief (at 48 n.8), Secretary Schmidt also opposed electronic disclosure of voters' PII under Title III before the District Court. JA155.

A recent decision by the Eleventh Circuit, which evaluated a request for electronic production under the public disclosure provision of the NVRA, is instructive. The NVRA "requires states to make covered records available in two ways: (1) for 'public inspection,' and (2) 'where available, photocopying at a reasonable cost.'" *See Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324, 1332-35 (11th Cir. 2024) (quoting 52 U.S.C. § 20507(i)(1)). The Eleventh Circuit held

---

[27] *See Hanzas*, 2026 WL 2754349, at *5.

that electronic production "is an entirely different method of disclosure" that Congress has not chosen to require in the NVRA. *Id.* at 1332. Not only did "public inspection" and "photocopying" not naturally include electronic production, but Congress knows how to amend statutes to require electronic disclosure. *Id.* at 1332-34. For example, the Freedom of Information Act used to require only "public inspection," but Congress later chose to require "agencies to make records available by 'computer telecommunications' or 'other electronic mean,'" or ""in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.'" *Id.* at 1332-33 (citations omitted). Congress did not do similarly for the NVRA. *Id.* at 1333.

DOJ argues (at 48) that the words "reproduction" and "copying" in Title III sweep more broadly than "photocopying." But those words must be read in context: "… be made available for inspection, reproduction, and copying *at the principal office of such custodian* by the Attorney General or his representative." 52 U.S.C. § 20703. This locational limitation (which applies to all three gerunds) indicates that Congress intended only for analogue forms of reproduction and copying, which must take

place *at* an office—not disclosed "by encrypted email" or "via the Department's secure file-sharing system." JA223.

This makes sense for a statute passed in 1960. That Congress subsequently required states to maintain a "computerized statewide voter registration lists" in HAVA, 52 U.S.C. § 21083(a)(1)(A), but did not amend Title III accordingly, confirms not only that Title III does not require electronic disclosure, *see Greater Birmingham Ministries*, 105 F.4th at 1333 (observing that Congress never updated the NVRA either), but also that the SVRL is not a Title III record, *see supra* at 52-56.

### E. Title III does not prohibit redactions of sensitive personal information.

Even if Title III required Secretary Schmidt to produce the SVRL electronically, nothing in Title III prohibits the redaction of sensitive voter information, such as voters' SSN4s and DLNs.[28]

Title III is silent regarding sensitive information. The question, therefore, is whether silence indicates absence of a prohibition, or the absence of authority. Once again, caselaw interpreting the NVRA's public disclosure provision is instructive. The NVRA, like Title III, requires

[28] *See Oregon*, 828 F.Supp.3d at 1107-08.

state officials to maintain certain records for a certain period and make them available for certain kinds of review, but does not address redacting sensitive information. *Compare* 52 U.S.C. § 20507(i)(1), *with* 52 U.S.C. §§ 20701 and 20703. Multiple courts have concluded that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information," such as SSNs and DLNs. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases); *Project Vote v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding that the NVRA does not require disclosure of SSNs, because disclosure would "potentially undermine[] the voter registration goals of the NVRA"), *aff'd* 682 F.3d 331, 339 (4th Cir. 2012). Nor does Title III prohibit "the appropriate redaction of uniquely or highly sensitive personal information," such as SSNs and DLNs. *See Bellows*, 92 F.4th at 56. And if sensitive information can be redacted, then it cannot be compelled.

DOJ attempts (at 46-47) to distinguish the NVRA as authorizing *public* disclosure. But the NVRA—which provides for lawsuits by both the Attorney General and private organizations, 52 U.S.C. § 20510—makes no such distinction as to who is entitled to what documents. 52

U.S.C. § 20507(i)(1). Nor have the courts made any distinction between governmental and private plaintiffs when determining that the NVRA's public disclosure provision is subject to privacy considerations. DOJ also argues (at 46) that voter registration records in the 1960s contained personally identifying information—but the cited cases did not involve Title III and so have no bearing on whether Title III permits redactions.[29] More importantly, voter registration records from the 1960s also predate HAVA's requirement—enacted in 2002—that voters provide SSN4 or DLN when registering to vote. 52 U.S.C. § 21083(a)(5)(A)(i).

But even contemporaneous decisions make clear that when evaluating a Title III demand, they were "not discussing confidential, private papers and effects" but rather "public records which ought ordinarily to be open to legitimate reasonable inspection." *Lynd*, 306 F.2d at 231. Indeed, it would be "significant[]" if the Attorney General sought records "privileged" or "exempt from discovery for any sound reason of public policy," or which would be "any unlawful invasion of any personal constitutional right of any respondent." *In re Coleman*, 208 F. Supp. 199,

[29] Secretary Schmidt has offered Pennsylvania's Full Voter Export, which includes voter addresses and birthdates. *See supra* at 10.

200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

DOJ does not dispute that voters' SSN4s and DLNs are highly confidential and sensitive information widely excluded from public record. JA172 n.4. Therefore, nothing in Title III requires Pennsylvania to disclose these highly sensitive identifiers.

## IV. DOJ's demand would violate the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act.

DOJ is seeking an unprecedented new collection of the SSN4s and DLNs of Pennsylvania's 8.9 million registered voters. On the face of its complaint, DOJ has not shown that it has complied with the Privacy Act, the E-Government Act, or the Driver's Privacy Protection Act.

**1. Privacy Act.** The Privacy Act does not, as DOJ claims, "only appl[y] to a federal agency's *disclosure* of private information." DOJ Br. at 50 (emphasis added). Congress enacted the Privacy Act to "provide certain safeguards for an individual against an invasion of personal privacy" by, among other things, regulating the *collection* of personal information by federal agencies. Pub. L. No. 93-579, § 2(a)(5), (b), 88 Stat. 1896 (1974). DOJ must provide notice to the American public of *what* information it is collecting *for each* system of records and publish notice

for public comment before making any change to the intended use of *that system*. 5 U.S.C. § 552a(e)(4), (e)(11). DOJ did not do so here.

Before an agency establishes or revises a "system of records" (i.e., a group of "records" about an individual collected or maintained by that agency), it must first publish a notice (called a SORN) in the Federal Register. 5 U.S.C. § 552a(a)(3), (a)(4), (a)(5), (e)(4). The SORN must include the categories of individuals on whom records are maintained. *Id.* § 552a(e)(4). For a "significant change," the agency must provide "adequate advance notice" to certain congressional committees and the Office of Management and Budget to permit evaluation of the effect on privacy rights. *Id.* § 552a(r); *see* OMB, Circular No. A-108, at 5-6 (Dec. 2016) (significant change is substantive in nature).

DOJ concedes that the Privacy Act applies to its demand and represents it will store the data in a system of records called the Central Civil Rights Division Index File and Associated Records, CRT-001. DOJ Br. at 51; *see* 68 Fed. Reg. 47610 (Aug. 11, 2003). But that system of records does not encompass the personal information of 8.9 million registered Pennsylvania voters (and millions of voters in other states) who are not "[s]ubjects of investigations, victims, [or] potential

witnesses," nor "other persons or organizations referred to CRT in potential or actual cases and matters of concern to CRT." *Cf.* 68 Fed. Reg. at 47611 (listing categories of individuals covered by the system). Nor has DOJ provided notice to the relevant congressional committees or OMB.

DOJ claims (at 52) that every single registered voter in Pennsylvania (and nationwide) is either a "subject" of DOJ's "investigation into list maintenance and voter fraud," or a "potential 'victim' of NVRA and HAVA non-compliance." This reading of the SORN is both "nonsensical" and "pure speculation." *Common Cause*, 2026 WL 3033772, at *29 (holding that DOJ's Voter List Maintenance Policy violated the Privacy Act). DOJ's reliance on *American Oversight v. DOJ*, 45 F.4th 579, 582 n.2 (2d Cir. 2022), omits that the court was referring to a *grand jury* investigation, which has not occurred here.

It is therefore apparent on the face of the Complaint that DOJ's request violates the Privacy Act.

**2. E-Government Act.** The E-Government Act requires a federal agency to conduct a "privacy impact assessment" (PIA) *before* "initiating a new collection of information." Pub. L. No. 107-347, § 208, 116 Stat. 2899 (2002); *see EPIC v. Pres. Advisory Comm'n on Election*

*Integrity*, 266 F. Supp. 3d 297, 309 (D.D.C. 2017). OMB guidance states that a PIA is required before "developing or procuring IT systems or projects that collect, maintain or disseminate information in identifiable form from or about members of the public" or "initiating, consistent with the Paperwork Reduction Act,[30] a new electronic collection of information in identifiable form for 10 or more persons." OMB, Mem. M-03-22 Attach. A § II(B)(a) (Sept. 26, 2003).[31]

DOJ's demand for the SSN4s and DLNs of 8.9 million registered Pennsylvania voters (and millions of voters in other states) is a new collection of information. DOJ is demanding *all* Pennsylvania voters' PII, which is not an administrative investigation "against specific individuals or entities." 44 U.S.C. § 3518(c)(1)(B)(ii); *contra* DOJ Br. at 54. DOJ does not dispute that it has never before sought such information. And DOJ's claim (at 55-56) that information cannot be "newly" collected by a federal agency if it was first maintained by someone else would render the E-

[30] DOJ's collection of SVRLs also violated the Paperwork Reduction Act. *Common Cause*, 2026 WL 3033772, at *35-*36.

[31] https://www.justice.gov/opcl/page/file/1131721/dl?inline.

Government Act meaningless, since all information collected by a federal agency comes from somewhere else first.

Because the Complaint does not allege that DOJ completed a PIA in advance, this violation also warrants dismissal.

### 3. Driver's Privacy Protection Act (DPPA)

Finally, the Driver's Privacy Protection Act generally prohibits the disclosure of DLNs and SSN4s obtained by the Pennsylvania Department of Transportation in connection with a motor vehicle record. 18 U.S.C. §§ 2721(a), 2725(1), (3), (4). These protections extend to the Department, which is permitted under DPPA to receive personal information from PennDOT to carry out voter registration functions. *Id.* § 2721(b)(1), (c); 25 Pa.C.S. § 1323(c). But DOJ's request does not fall within a permissible use because it has not identified how it needs voters' SSN4 and DLN to assess Pennsylvania's compliance with the NVRA and HAVA. *See supra* at 42-52. DOJ's startling claim (at 57) that it is "verifying voter registration records" is entirely contrary to the constitutional and statutory scheme established by the NVRA and HAVA.

## CONCLUSION

For the reasons stated above, the Court should affirm.

November 20, 2026

Respectfully submitted,

CAROLYN A. DeLAURENTIS
Chief Counsel
KATHLEEN A. MULLEN
Executive Deputy Chief Counsel
Pennsylvania Department of State
306 North Office Bldg.
401 North Street
Harrisburg, PA 17120-0500

JENNIFER SELBER
General Counsel
MICHAEL J. FISCHER
Executive Deputy General Counsel

*/s/Aimee D. Thomson*
AIMEE D. THOMSON
Deputy General Counsel
Office of General Counsel
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov

*Counsel for Secretary of the Commonwealth Al Schmidt*

## COMBINED CERTIFICATES

I, Aimee D. Thomson, certify that:

1. I am a member of the bar of this Court in good standing. 3d Cir. L.A.R. 46.1(e).
2. Virus detection software was run on this file and no virus was detected. 3d Cir. L.A.R. 31.1(c).
3. The text of the electronic brief is identical to the text in the paper copies. 3d Cir. L.A.R. 31.1(c).
4. This response contains 12,966 words and therefore complies with Federal Rule of Appellate Procedure 27(d)(2)(A). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

November 20, 2026

/s/ *Aimee D. Thomson*
Deputy General Counsel

## CERTIFICATE OF SERVICE

I, Aimee D. Thomson, hereby certify that a copy of this response has been served on all counsel of record using the Court's CM/ECF system.

November 20, 2026

/s/ *Aimee D. Thomson*
Deputy General Counsel